**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4525-15T3

FILIZ BERMEK,

    Plaintiff-Appellant,

v.

THE CITY OF PASSAIC, a body
politic, and RONALD VAN
RENSALIER,

    Defendants-Respondents.

_____

Argued March 13, 2018 — Decided July 25, 2018

Before Judges Carroll, Mawla, and DeAlmeida.

On appeal from Superior Court of New Jersey,
Law Division, Passaic County, Docket No.
L-1450-14.

Pauline M.K. Young argued the cause for
appellant (McLaughlin & Nardi, LLC, attorneys;
Pauline M.K. Young and Maurice W. McLaughlin,
on the briefs).

Peter P. Perla, Jr. argued the cause for
respondents (Jasinski, PC, attorneys; Peter P.
Perla, of counsel and on the brief; Erin L.
Henderson, on the brief).

PER CURIAM

Plaintiff Filiz Bermek appeals from a May 27, 2016 order granting summary judgment to defendants on her claims under the Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19-1 to -14, and for punitive damages. Plaintiff also appeals three discovery-related orders. We affirm.

I.

The following facts are taken from the record. Defendant City of Passaic (the City) hired plaintiff as the City Engineer on August 31, 2012. She was interviewed for the position by Ricardo Fernandez, the City's Business Administrator, who also made the decision to hire plaintiff. Fernandez approved the salary plaintiff requested during her interview, a raise after two and a half months of employment, a waiver of plaintiff's monetary contributions for health care benefits, and her request to revise her job title so that she would enjoy civil service benefits.

Plaintiff had a short tenure with the City. Fernandez terminated plaintiff on March 13, 2014, approximately eighteen months after she was hired. According to the City, plaintiff's termination was based on a number of poor performance issues, addressed in greater detail below. Plaintiff alleges, however, that the grounds on which she was terminated were a pretext to mask the fact that the City fired her as retaliation for whistleblower activity protected by CEPA.

2                                          A-4525-15T3

Plaintiff alleges several acts of whistleblowing.  The first arose on June 26, 2013.  The prior day, Passaic City Councilman Gary Schaer requested that a stop sign be erected on a street corner in the City.  It was plaintiff's responsibility to review and approve such requests.  Plaintiff determined that it would be illegal to erect a stop sign at the location identified by Schaer, and that a temporary stop sign already in place there was illegal and had to be removed.  The City complied with plaintiff's opinion, removed the temporary sign, and did not erect a permanent sign.

Plaintiff conveyed her decision on Schaer's request in an email sent directly to Schaer and other members of the City Council.  This violated the City's established chain of command.  Plaintiff, as the City Engineer, was the head of a City department.  The chain of command requires department heads to report to a director.  In plaintiff's case, she was to report to defendant Ronald Van Rensalier, the Director of Community Development.  Directors report to Fernandez.

On June 28, 2013, Van Rensalier sent plaintiff a Notice of Disciplinary Action for Insubordination based on her failure "to follow the proper chain of command by making a direct communication to members of the City's governing body via email without the expressed written consent, authorization or knowledge of [her] superiors . . . ."  The notice stated that plaintiff had previously

and repeatedly been directed to follow the proper chain of command. For example, plaintiff was advised to comply with the chain of command on a number of occasions when she reported to Fernandez, rather than to Van Rensalier, whom plaintiff considered to be an equal, and not her supervisor. In lieu of suspension, plaintiff agreed to surrender one personal day and two vacation days.

Plaintiff also alleges that she engaged in protected whistleblowing when she refused to sign architectural drawings because she is not a licensed architect. Despite this allegation, at her deposition plaintiff could not identify any projects on which she was asked to sign architectural drawings. The record contains no evidence of any such drawings being presented to plaintiff for her signature.

Plaintiff also alleges that she engaged in whistleblowing activity when she refused to sign a number of certifications relating to city litigation. Executing such certifications, which were required by the City's insurance carrier, was included in plaintiff's job description. Plaintiff's refusal was based on her disagreement with the wording of the attestation clause in the certifications. The clause stated that plaintiff had personal knowledge of the facts in the certifications, and that she was subject to punishment if the statements were false. Plaintiff believed that the certifications did not accurately reflect the

state of her knowledge, and she was uncomfortable with the mention of punishment for false swearing. She expressed her preference for the language in the form certifications used by the City's former insurance carrier.

In a meeting secretly recorded by plaintiff in violation of workplace policy, Christopher Harriott, the City Attorney, explained to plaintiff that she would be subject to punishment if she were to lie in any certification, regardless of the language in the attestation clause. He also assured plaintiff that he would not ask her to sign a document that was not true. Despite these assurances, plaintiff refused to sign the certifications. Harriott informed plaintiff that she would not be compelled to sign any certification with which she was uncomfortable, and that another employee would sign the certifications.

Finally, plaintiff alleges that she engaged in whistleblowing activity when she complained to Fernandez that Van Rensalier frequently was angry, and yelled at plaintiff. During her deposition, plaintiff admitted that Van Rensalier's anger was not related to plaintiff's work, or any protected personal characteristics, but appeared to be random. She also conceded that Van Rensalier often yelled at other employees.

Fernandez decided to terminate plaintiff on March 13, 2014. Van Rensalier delivered the decision to plaintiff, who secretly

recorded their conversation, another violation of workplace policy. Van Rensalier repeatedly told plaintiff that she was being terminated because her performance as City Engineer was not satisfactory.

A month later, on April 16, 2014, plaintiff filed a complaint in the Law Division alleging eight causes of action arising from her termination. Pertinent to this appeal is plaintiff's claim that defendants terminated her for whistleblowing activity in violation of CEPA.[1]

On April 24 2014, plaintiff served a document request and 160 interrogatories on defendants. Nearly a year later, defendants provided responses, including 540 pages of documents, and over 1000 emails. Defendants also made documents in their possession available for review and copying by plaintiff. Her counsel never reviewed or copied those documents.

On April 29, 2015, plaintiff moved to compel more complete answers to her discovery requests or, in the alternative, to suppress defendants' answer without prejudice pursuant to Rule

---

[1] Plaintiff also alleged that defendants violated the Law Against Discrimination, N.J.S.A. 10:5-1 to -49, by terminating her on the basis of her gender, age, race, ethnicity, and/or religion. In addition, she alleged that defendants violated public policy, subjected her to a hostile work environment, denied her equal protection, and violated her civil, procedural and substantive due process rights, and free speech. Plaintiff does not appeal the entry of summary judgment in favor of defendants on those claims.

4:23-5(a)(1) for failure to make discovery. Defendants cross-moved for a protective order.

On July 20, 2015, after giving the parties an opportunity to resolve their discovery disputes, the trial court denied plaintiff's motion, except to the extent that defendants were ordered to supplement their response to a single interrogatory.

Also on April 29, 2015, plaintiff served deposition notices for Harriott, Schaer, Fernandez, and Van Rensalier. The depositions were scheduled for June 2015. However, on June 16, 2015, defendants notified plaintiff that the witnesses were not available on the agreed upon dates, and requested alternate dates for August 2015.

On September 1, 2015, defendants filed a notice of motion to quash the deposition notice of Schaer, and for a protective order. A certification signed by Schaer supported the motion. He certified that he had no first-hand knowledge of the facts or allegations in plaintiff's complaint, nor had he engaged in any discussions with Fernandez or Van Rensalier about any disciplinary matters involving plaintiff. Schaer certified that he first heard that plaintiff had been terminated after the termination had taken place. Defendants argued that Schaer's deposition would not lead to the discovery of relevant or admissible evidence.

On September 18, 2015, the court granted defendants' motion. The court ordered, however, that after the depositions of Fernandez, Harriott, and Van Rensalier, plaintiff could seek to depose Schaer if the other depositions revealed facts that would justify taking his deposition. Plaintiff never renewed her request to depose Schaer.

On October 3, 2015, defendants moved to extend the discovery deadline and submitted a proposed discovery scheduling order. In early October 2015, the parties agreed that all outstanding depositions would be taken on various dates in December 2015. On November 5, 2015, the trial court granted the motion to extend the discovery deadline, and entered an order setting a discovery end date of February 5, 2016, and directing that any motions for summary judgment be filed by that date.

On November 25, 2015, defendants informed plaintiff that several of the December 2015 deposition dates of defense witnesses had to be rescheduled. On December 2 and 15, 2015, plaintiff was deposed. On December 9, 2015, defendants sent plaintiff an email proposing four possible deposition dates for Van Rensalier. Plaintiff did not respond, and did not offer other possible dates to take the deposition. Defendants also continued to make efforts to schedule the deposition of Fernandez.

On December 10, 2015, plaintiff canceled the deposition of Harriott. She argued that the deposition could not take place until the certifications on which plaintiff based her CEPA claims were produced. Defendants countered that, despite repeated requests, plaintiff could not identify the certifications on which her claims were based. The deposition was never rescheduled.

On January 20, 2016, shortly before the discovery deadline, plaintiff moved to extend the discovery period. Defendants did not oppose the motion.

On February 10, 2016, the court denied plaintiff's motion, noting "good cause not demonstrated why after 612 days of discovery have elapsed so much discovery remains to be done . . . ."[2]

On February 23, 2016, plaintiff filed a notice of motion for reconsideration of the February 10, 2016 order. The motion was accompanied by a certification that provided greater detail regarding the parties' discovery efforts, but made no new legal argument.

On March 30, 2016, the trial court denied plaintiff's motion, finding that she "had ample opportunity during the 612 days of

---

[2] Plaintiff filed a motion for leave to appeal to this court from the February 10, 2016 order, as well as an application for permission to file an emergent motion. We denied both.

A-4525-15T3

discovery on this Track III case to move to compel defendants to provide the necessary discovery but inexplicably failed to do so."

On February 5, 2016, defendants moved for summary judgment. They argued that plaintiff failed to establish that she engaged in protected whistleblowing activity, or that the reasons proffered for her termination were pretextual. Defendants argued that plaintiff was terminated for numerous performance issues.

For example, on June 20, 2013, plaintiff was summoned to Van Rensalier's office to be reprimanded for holding a meeting without Fernandez present, even though she had invited Fernandez to attend. Plaintiff later approved a $99,000 change order on a project for work that was included in the original specification costs. Further, plaintiff was investigated by the Civil Service Commission, Division of Selection Services, for falsely stating that she lived in Passaic to receive priority for civil service positions with the City. Plaintiff admitted this falsehood. Plaintiff was also reprimanded repeatedly for failing to obey the City's chain of command, and once for taking an unapproved early departure from work without notifying her supervisor.

On May 27, 2016, the trial court granted defendants' summary judgment motion. The court concluded that plaintiff had not raised a material issue of disputed fact regarding whether she engaged in whistleblowing activities, and offered only self-serving

statements and speculation that she was terminated in retaliation for protected activities.

In support of its conclusion, the trial court noted that during her deposition plaintiff could not identify any certification or architectural drawing she was asked to sign. Although plaintiff argued that her refusal to sign documents ultimately resulted in her termination, the court concluded that plaintiff produced no evidence supporting this allegation. Moreover, the court noted plaintiff's admission that her refusal to sign documents did not stem from a perceived violation of any law, rule, regulation, or matter of public policy, but was based on her discomfort with the language in the certifications, and because she was not authorized to sign architectural drawings.

Moreover, the court found that plaintiff did not establish that her report of Van Rensalier's behavior was whistleblowing, given her concession that he shouted at many employees, and became angry for reasons unrelated to her personal characteristics. Thus, the court concluded, plaintiff produced no evidence that she complained of a perceived violation of a law, rule, regulation, or public policy. The court found plaintiff effectively complained that Van Rensalier did not comport with workplace civility, something not protected by CEPA.

Additionally, the court concluded that plaintiff produced no evidence rebutting defendants' proffered legitimate reasons for her termination. The court described plaintiff's arguments as "a bleak attempt to dispute her numerous performance issues, documented in the brief time she was employed by the City."

Finally, the court held that plaintiff produced no evidence supporting an award of punitive damages. Given that plaintiff had not established a CEPA claim, the court concluded that she also had not established that defendants acted with actual malice, or with wanton and willful disregard of plaintiff's rights. This appeal followed.

## II.

We address first the three orders relating to discovery: (1) the September 18, 2015 order quashing the deposition of Schaer; (2) the February 10, 2016 order denying plaintiff's motion to extend the discovery end date; and (3) the March 30, 2016 order denying reconsideration of the February 10, 2016 order.

We "'normally defer to a trial court's disposition of discovery matters . . . unless the court has abused its discretion . . . .'" Connolly v. Burger King Corp., 306 N.J. Super. 344, 349 (App. Div. 1997) (quoting Payton v. N.J. Tpk. Auth., 148 N.J. 524, 559 (1997)). Abuse of discretion occurs when a decision is "made without a rational explanation, inexplicably departed from

established policies, or rested on an impermissible basis." Flagg v. Essex Cty Prosecutor, 171 N.J. 561, 571 (2002) (quotations omitted). "Under this standard, 'an appellate court should not substitute its own judgment for that of the trial court, unless the trial court's ruling was so wide of the mark that a manifest denial of justice resulted.'" Hanisko v. Billy Casper Golf Mgmt., Inc., 437 N.J. Super. 349, 362 (App. Div. 2014) (quoting State v. Brown, 170 N.J. 138, 147 (2001)).

1.  September 18, 2015 Order Quashing Schaer Deposition.

It is a "well-established principle that requests for discovery are to be liberally construed and accorded the broadest possible latitude to ensure that the ultimate outcome of litigation will depend on the merits in light of the available facts." Piniero v. N.J. Div. of State Police, 404 N.J. Super. 194, 204 (App. Div. 2008). However, Rule 4:10-3 "allows a party from whom discovery is sought to obtain relief from the court to limit that discovery in appropriate situations." Serrano v. Underground Utils. Corp., 407 N.J. Super. 253, 267 (App. Div. 2009). The rule authorizes trial courts to "make any order that justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ." R. 4:10-3. A protective order specifically may direct, that "discovery may not be had." See R. 4:10-3(a). "[T]o overcome the presumption in

favor of discoverability, a party must show 'good cause' for withholding relevant discovery . . . ." <u>Capital Health Sys. v. Horizon Healthcare Servs.</u>, 230 N.J. 73, 80 (2017).

Having carefully reviewed the motion record in light of the applicable legal standards, we conclude that the trial court did not abuse its discretion when granting defendants' motion to quash Schaer's deposition. Schaer, a member of the Passaic governing body, submitted a certification in which he attested to a lack of knowledge of any facts relating to plaintiff's claims. Plaintiff does not allege that Schaer was involved in her termination, or that he had decision-making authority with respect to her employment. In fact, pursuant to N.J.S.A. 40:69A-43(c), with the exception of appeals from the removal of a department head or director, the City's governing body has no authority over routine personnel decisions, including hiring, discipline, and termination. Consistent with this statute, Schaer certified that he had no involvement in plaintiff's termination, having been informed of it, along with the other members of the governing body, after it occurred.[3] The record amply supports the trial

---

[3] Passaic operates under the Mayor-Council form of government authorized by the Faulkner Act. <u>See</u> N.J.S.A. 40:69A-32. The Mayor is responsible for the administrative and executive function of the City, and the City Council is the legislative body with specific enumerated authority. <u>See</u> N.J.S.A. 40:69A-36.

court's conclusion that Schaer's deposition was unlikely to lead to relevant or admissible evidence.

Moreover, the trial court did not entirely preclude plaintiff from taking Schaer's deposition. The court, instead, ordered that if the depositions of Harriott, Fernandez, and Van Rensalier uncovered facts suggesting that Schaer's deposition would be appropriate, plaintiff could move to take Schaer's deposition. Having not taken any depositions, plaintiff did not uncover a factual basis for renewing her request to depose Schaer.

2. <u>February 10, 2016 Order Denying Extension of Discovery Deadline.</u>

Discovery extensions are governed by <u>Rule</u> 4:24-1, which allows a party to request an extension by motion returnable before the conclusion of the applicable discovery period. Where no trial date has been set, an extension may be granted on good cause shown. <u>Ibid.</u> "The term 'good cause shown' is flexible and its meaning is not fixed and definite." <u>Tholander v. Tholander</u>, 34 N.J. Super. 150, 152 (Ch. Div. 1955) (citation omitted).

> In deciding whether good cause has been shown for an extension of discovery in the absence of a fixed arbitration or trial date, there are a number of factors which a trial court should consider. They include, but are not limited to, the following:
>
> (1) the movant's reasons for the requested extension of discovery;

(2) the movant's diligence in earlier pursuing discovery;

(3) the type and nature of the case, including any unique factual issues which may give rise to discovery problems;

(4) any prejudice which would inure to the individual movant if an extension is denied;

(5) whether granting the application would be consistent with the goals and aims of "Best Practices";

(6) the age of the case and whether an arbitration date or trial date has been established;

(7) the type and extent of discovery that remains to be completed;

(8) any prejudice which may inure to the non-moving party if an extension is granted; and

(9) what motions have been heard and decided by the court to date.

[Leitner v. Toms River Reg'l Schs., 392 N.J. Super. 80, 87-88 (App. Div. 2007).]

Plaintiff's stated reason for seeking the discovery extension was her inability to depose the witnesses under defendants' control. However, plaintiff waited a year after filing the complaint to serve her deposition notices. In addition, she canceled one deposition, rejected numerous proposed deposition dates because of the demands of her counsel's other cases, never filed a motion to compel any depositions, and had already been granted two discovery extensions. At the time of the trial court's

decision, plaintiff already had 612 days to complete discovery on a Track III case ordinarily given a discovery period of 450 days. See R. 4:24-1(a). Although plaintiff argues otherwise, the record shows that the delay in taking depositions was not caused solely by defendants. Plaintiff was insufficiently diligent in pursuing discovery. In light of these facts, the trial court's denial of plaintiff's motion to extend the discovery period for a third time was not a mistaken exercise of its discretion.

3.  March 30, 2016 Order Denying Reconsideration
    of the February 10, 2016 Order.

The February 10, 2016 order denying plaintiff's motion to extend the discovery deadline is interlocutory. As the Supreme Court explained, "[b]y definition, an order that 'does not finally determine a cause of action but only decides some intervening matter pertaining to the cause[,] and which requires further steps . . . to enable the court to adjudicate the cause on the merits[,]' is interlocutory." Moon v. Warren Haven Nursing Home, 182 N.J. 507, 512 (2005) (quoting Black's Law Dictionary 815 (6th ed. 1990)); see also Wein v. Morris, 194 N.J. 364 (2008).

A trial court "has the inherent power, to be exercised in its sound discretion, to review, revise, reconsider and modify its interlocutory orders at any time prior to the entry of final judgment." Johnson v. Cyklop Strapping Corp., 220 N.J. Super.

250, 257 (App. Div. 1987).  As Judge Pressler explained, "the strict and exacting standards of R. 4:50" do "not apply to interlocutory orders entered prior to final disposition."  Ibid. Nor do the limitations of R. 4:49-2 apply to requests for relief from interlocutory orders.  Sullivan v. Coverings & Installation, Inc., 403 N.J. Super. 86, 96-97 (App. Div. 2008).  See also Del Vecchio v. Hemberger, 388 N.J. Super. 179, 188-89 (App. Div. 2006); Cummings v. Bahr, 295 N.J. Super. 374 (App. Div. 1996); D'Atria v. D'Atria, 242 N.J. Super. 392 (Ch. Div. 1990).  We review the denial of a motion for reconsideration of an interlocutory order for an abuse of discretion.  Johnson, 220 N.J. Super. at 263-64.

Plaintiff's motion for reconsideration was essentially a reiteration of her original motion to extend the discovery deadline.  Although the moving papers set forth the parties' discovery efforts in greater detail, plaintiff presented no new legal argument and offered no new facts warranting reconsideration.  The trial court did not abuse its discretion in denying the motion.

### III.

We review the trial court's decision granting summary judgment de novo, using "the same standard that governs trial courts in reviewing summary judgment orders."  Prudential Prop. & Cas. Ins. Co. v. Boylan, 307 N.J. Super. 162, 167 (App. Div. 1998).

18

Rule 4:46-2 provides that a court should grant summary judgment when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law."  "Thus, the movant must show that there does not exist a 'genuine issue' as to a material fact and not simply one 'of an insubstantial nature'; a non-movant will be unsuccessful 'merely by pointing to any fact in dispute.'"  Prudential, 307 N.J. Super. at 167.

Self-serving assertions that are unsupported by evidence are insufficient to create a genuine issue of material fact.  Miller v. Bank of Am. Home Loan Servicing, L.P., 439 N.J. Super. 540, 551 (App. Div. 2015).  "Competent opposition requires 'competent evidential material' beyond mere 'speculation' and 'fanciful arguments.'"  Hoffman v. Asseenontv.Com, Inc., 404 N.J. Super. 415, 426 (App. Div. 2009) (citations omitted).  We review the record "based on our consideration of the evidence in the light most favorable to the parties opposing summary judgment."  Brill v. Guardian Life Ins. Co., 142 N.J. 520, 523-24 (1995).

In pertinent part, CEPA provides:

> [a]n employer shall not take any retaliatory action against an employee because the employee does any of the following:

. . . .

c. Objects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes:

(1) is in violation of a law, or a rule or regulation promulgated pursuant to law, including any violation involving deception of, or misrepresentation to, any shareholder, investor, client, patient, customer, employee, former employee, retiree or pensioner of the employer of any governmental entity . . . .; or

(2) is fraudulent or criminal, including any activity, policy or practice of deception or misrepresentation which the employee reasonably believes may defraud any shareholder, investor, client, patient, customer, employee, former employee, retiree or pensioner of the employer or any governmental entity . . . .

[N.J.S.A. 34:19-3(c)(1) to (2).]

Prohibited retaliatory action includes suspending or terminating an employee from his or her employment. N.J.S.A. 34:19-2(e); Donelson v. DuPont Chambers Works, 412 N.J. Super. 17, 29 (App. Div. 2010), rev'd on other grounds, 206 N.J. 243 (2011).

To establish a CEPA violation, a plaintiff must demonstrate that:

(1) he or she reasonably believed that his or her employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy;

(2) he or she performed a "whistle-blowing" activity described in [N.J.S.A.] 34:19-3(c);

(3) an adverse employment action was taken against him or her; and

(4) a causal connection exists between the whistle-blowing activity and the adverse employment action.

[Lippman v. Ethicon, Inc., 222 N.J. 362, 380 (2015) (citations omitted).]

A plaintiff who brings a CEPA claim is not required to show that his or her employer's conduct was actually fraudulent or illegal. See Dzwonar v. McDevitt, 177 N.J. 451, 462 (2003). Rather, "the plaintiff simply must show that he or she 'reasonably believes that to be the case.'" Ibid. (quoting Estate of Roach v. TRW, Inc., 164 N.J. 598, 613 (2000) (internal quotation omitted)). However, "as a threshold matter" the court "must 'first find and enunciate the specific terms of a statute or regulation, or the clear expression of public policy, which would be violated if the facts as alleged are true.'" Dzwonar, 177 N.J. at 463 (quoting Fineman v. N.J. Dep't of Human Servs., 272 N.J. Super. 606, 620 (App. Div. 1994)). A mere disagreement with an employer's practice, policy, or activity is insufficient to defeat summary judgment. Young v. Schering Corp., 275 N.J. Super. 221, 236-37 (App. Div. 1995).

If a plaintiff establishes the statutory elements, the burden shifts back to the defendant to "advance a legitimate, nondiscriminatory reason for the adverse" employment action. Klein v. Univ. of Med. & Dentistry of N.J., 377 N.J. Super. 28, 38 (App. Div. 2005). "If such reasons are proffered, [the] plaintiff must then raise a genuine issue of material fact that the employer's proffered explanation is pretextual." Id. at 39.

After reviewing the motion record, in light of applicable legal standards, we conclude that the trial court's order granting summary judgment to defendants was sound.

Plaintiff failed to raise a genuine issue of material fact with respect to whether she engaged in any protected whistleblowing activity. She identified no law, rule, regulation, or public policy she believed was violated by defendants. Although plaintiff alleged that she was asked to sign drawings and certifications that she was uncomfortable signing, she did not explain why she believed that her employer's requests violated any law, rule, regulation, or public policy.

In addition, the trial court correctly concluded that plaintiff's complaint that Van Rensalier acted angry and yelled at her did not amount to whistleblowing under CEPA. Plaintiff conceded that Van Rensalier's actions were not caused by plaintiff's gender, race, religion, or other protected

22

characteristic. She acknowledged that Van Rensalier was often angry for unidentified reasons, and that he shouted at many employees in addition to plaintiff. In effect, plaintiff complained about Van Rensalier's unprofessional behavior, not about a violation of a law, rule, regulation, or public policy.

Moreover, even if plaintiff can be viewed as having engaged in whistleblowing, defendants produced significant evidence that plaintiff's termination was based on a history of poor performance, and insubordination. The record demonstrates that plaintiff bristled at the City's chain of command. She considered Van Rensalier, her immediate supervisor, to be an equal, and frequently reported directly to Fernandez, circumventing proper supervision. In addition, plaintiff directly emailed the members of the governing body after Schaer's stop sign inquiry, another violation of the chain of command. Defendants also produced proof that plaintiff had a least one unexplained and unapproved early departure from work, and made a costly error with a work order. Plaintiff did not raise a genuine dispute of material fact contesting the validity of defendants' proffered reasons for her termination.

In light of our decision affirming the order granting summary judgment to defendants, we conclude that plaintiff's argument with

respect to punitive damages is without sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4525-15T3