165 A.3d 729

CAPITAL HEALTH SYSTEM, INC.; THE COMMUNITY HOSPITAL GROUP, INC., T/A JFK MEDICAL CENTER; ST. LUKE'S WARREN HOSPITAL, INC.; TRINITAS REGIONAL MEDICAL CENTER, PLAINTIFFS, AND CENTRASTATE MEDICAL CENTER, INC.; HOLY NAME MEDICAL CENTER, INC.; AND THE VALLEY HOSPITAL, INC., PLAINTIFFS–APPELLANTS, v. HORIZON HEALTHCARE SERVICES, INC., DEFENDANT–RESPONDENT. SAINT PETER'S UNIVERSITY HOSPITAL, INC., PLAINTIFF–APPELLANT, v. HORIZON HEALTHCARE SERVICES, INC., DEFENDANT–RESPONDENT.

Argued June 20, 2017—Decided July 24, 2017

74

*Michael K. Furey* argued the cause for appellants Centrastate Medical Center, Inc., Holy Name Medical Center, Inc., and the Valley Hospital Group, Inc., in *Capital Health System v. Horizon Healthcare* (A–29/30–16) (*Day Pitney*, attorneys; *Michael K. Furey* and *Dennis R. LaFiura*, on the briefs).

*Jeffrey J. Greenbaum* and *Dennis J. Drasco* argued the cause for appellant Saint Peter's University Hospital, Inc. in *Capital Health System v. Horizon Healthcare* (A–29/30–16) and *Saint Peter's University Hospital v. Horizon Healthcare* (A–59–16) (*Sills Cummis & Gross* and *Lum Drasco & Positan*, attorneys; *Jeffrey J. Greenbaum, James M. Hirschhorn, Jason L. Jurkevich, Megan L. Wiggins, Dennis J. Drasco*, and *Elaine R. Cedrone*, of counsel and on the briefs).

*Michael O. Kassak* argued the cause for respondent Horizon Healthcare Services, Inc. in *Capital Health System v. Horizon Healthcare* (A–29/30–16) and *Saint Peter's University Hospital v. Horizon Healthcare* (A–59–16) (*White and Williams*, attorneys; *Michael O. Kassak, Robert Wright, Andrew I. Hamelsky, Edward M. Koch*, and *Victor J. Zarrilli*, on the briefs).

*Andrew B. Joseph* argued the cause for respondent McKinsey & Company, Inc. in *Saint Peter's University Hospital v. Horizon Healthcare* (A–59–16) (*Drinker Biddle & Reath*, attorneys; *Andrew B. Joseph*, on the brief).

*Edwin F. Chociey, Jr.* argued the cause for intervenor Hackensack University Health Network and Inspira Health Network in *Capital Health System v. Horizon Healthcare* (A–29/30–16) (*Riker, Danzig, Scherer, Hyland & Perretti*, attorneys; *Edwin F. Chociey, Jr.*, and *Glenn A. Clark* on the brief).

*William F. Maderer* argued the cause for intervenor Robert Wood Johnson University Hospital in *Capital Health System v. Horizon Healthcare* (A–29/30–16) (*Saiber*, attorneys; *William F. Maderer* and *Vincent C. Cirilli*, on the brief).

Judge FISHER (temporarily assigned) delivered the opinion of the Court.

Defendant Horizon Healthcare Services, Inc., New Jersey's largest health insurer, maintains a two-tiered provider-hospital system known as OMNIA approved by the Department of Banking and Insurance. *Capital Health Sys., Inc. v. Dep't of Banking & Ins.*, 445 *N.J.Super.* 522, 532, 139 *A.3d* 134 (App. Div. 2016). Plaintiff Saint Peter's University Hospital, Inc., and plaintiff Capital Health System, Inc. and others, commenced separate lawsuits in different vicinages, claiming Horizon treated them unfairly and in a manner that contravened their agreements when they were placed in OMNIA's less advantageous Tier 2. Plaintiffs assert Horizon's tiering procedures were pre-fitted or wrongfully adjusted to guarantee selection of certain larger hospitals for the preferential Tier 1.

In discovery, the chancery judges in the two matters required Horizon's turnover to plaintiffs of the same or similar materials despite Horizon's objections. The Appellate Division granted leave to appeal and reversed those discovery orders by way of a reported decision, *Capital Health Sys., Inc. v. Horizon Healthcare Servs., Inc.*, 446 *N.J.Super.* 96, 140 *A.3d* 598 (App. Div. 2016), and later granted leave to appeal and stayed subsequent orders compelling Horizon's production of additional discovery to Saint Peter's. We granted leave to appeal these interlocutory orders, 228 *N.J.* 516, 158 *A.3d* 1182 (2017), 228 *N.J.* 519, 158 *A.3d* 1184 (2017),

—— *N.J.* —— (2017), and now reverse the Appellate Division in all respects.

Plaintiffs' claims are based on the clear disadvantage of being placed in Tier 2 because Horizon "adopted strong financial incentives to encourage" its subscribers "to go to Tier 1" hospitals, i.e., seven large hospital systems referred to as "Alliance partners." These Alliance partners agreed to financial concessions on reimbursement in return for sharing in the savings expected from OMNIA and an increase in patient-volume. And Horizon "aggressively promoted Tier 1 hospitals as providing better care at a lower cost."

Horizon retained McKinsey & Company to assist in the selection of the Alliance partners. McKinsey's May 20, 2014 report identified and prioritized potential Alliance partners through the use of broad criteria. McKinsey also assisted Horizon in the scoring of hospitals. Plaintiffs claim that the method and manner of Horizon's tiering of hospitals constituted a breach of their network hospital agreements (NHAs), which contain Horizon's representations that each hospital "shall participate in new networks or subnetworks" and "in new products," provided the hospital "meets all criteria and standards established and evaluated by Horizon." Plaintiffs also claim that Horizon breached the implied covenant of good faith and fair dealing, and assert other tort and contract theories, as well. In both suits, the chancery judges entered orders to show cause without restraints, directed expedited discovery, and executed confidentiality orders, the terms of which were consented to by the parties; these confidentiality orders prohibited the use of proprietary information for any business, commercial, competitive, or personal purpose and limited disclosure to counsel, the parties, and outside experts.

Discovery disputes quickly arose. Saint Peter's moved for Horizon's production of the McKinsey report, the Alliance agreements, documents relating to the formulation of Tier 1 criteria, the partnership and performance scores for all Tier 1 hospitals, its own partnership and performance scores, and information regard-

ing communications between Horizon and the Alliance partners. Horizon argued these materials were irrelevant and confidential. After an in camera review, Chancery Judge Frank M. Ciuffani ordered—subject to the confidentiality order—Horizon's production of the unredacted McKinsey report, the Tier 1 hospital scores, the Alliance agreements, minutes of the board of director's meetings, and written communications between Horizon and Robert Wood Johnson University Hospital (RWJ),[1] an Alliance partner which neighbors Saint Peter's in New Brunswick. The judge also denied Horizon's motion for reconsideration, except he further limited disclosure of the rate agreement to Saint Peter's counsel and experts.

The proceedings in the Capital Health matter were not dissimilar. Chancery Judge Robert P. Contillo examined the McKinsey report in camera and authorized some redactions prior to turnover. The judge also limited disclosure of proprietary information to each hospital's attorney, each hospital's CFO and CEO, one "technical person," and each hospital's outside consultant. Plaintiffs later sought production of the Alliance agreements and communications between Horizon and the Alliance partners regarding OMNIA. Horizon argued these materials were irrelevant and contained confidential, proprietary and trade secret information. Judge Contillo ordered a turnover subject to some redactions.

The Appellate Division granted leave to appeal and reversed the discovery orders in both matters. Although the panel cited the deferential standard of review applicable in discovery matters, *Capital Health Sys., supra,* 446 *N.J.Super.* at 114, 140 *A.*3d 598, it reversed because, having balanced the right to discovery against

---

[1] The judge required that Horizon produce not only its Alliance agreement with RWJ, but also the rate agreement, letter of intent, and template, while limiting—"for the eyes of St. Peter's counsel only"—the specific rates. Turnover of the Alliance agreements with other hospitals was subject to any applications by those hospitals for a protective order; no affected Alliance partner sought relief from disclosure.

what it viewed as relatively weak claims, *id.* at 116, 140 *A.*3d 598 (noting the claims "rest[ed] on the slenderest of reeds"), the panel found it "difficult to discern the relevancy of the far-ranging discovery" sought, *ibid.* And, recognizing that the presumption of discoverability of relevant information may be overcome by a demonstration that an evidentiary privilege applies, *Payton v. N.J. Tpk. Auth.*, 148 *N.J.* 524, 539, 691 *A.*2d 321 (1997), the panel determined that Horizon's need for protection outweighed plaintiffs' need for disclosure.

Following the Appellate Division's published decision, Saint Peter's pursued additional discovery. Judge Ciuffani ordered a turnover of other alleged proprietary materials, concluding that the Appellate Division's decision was limited to certain specific documents and that information relating to Horizon's criteria for rating the hospitals was relevant to the theory that Horizon had crafted and implemented the tiering process to reach a predetermined result. The judge also required that McKinsey comply with Saint Peter's subpoena and that Horizon produce the discovery turned over in the Capital Health matter that Saint Peter's had requested.

Through a series of expedited orders, the Appellate Division granted Horizon's and McKinsey's motions for a stay and for leave to appeal. The panel determined the orders compelling additional discovery were inconsistent with its prior determination in the first appeal and that Saint Peter's had failed to alter the panel's "prior assessment" of Saint Peter's "likelihood of success" on the merits. The panel did not dispose of the interlocutory appeal it permitted, no doubt because we had already granted leave to appeal its earlier published determination.

■ Our disposition of these interlocutory appeals from the Appellate Division's published opinion and later unpublished orders is driven by the familiar abuse-of-discretion standard applicable when appellate courts review discovery orders: appellate courts are not to intervene but instead will defer to a trial judge's discovery rulings absent an abuse of discretion or a judge's

misunderstanding or misapplication of the law. *Pomerantz Paper Corp. v. New Cmty. Corp.*, 207 *N.J.* 344, 371, 25 *A.*3d 221 (2011).

■■■■ In applying this standard, appellate courts must start from the premise that discovery rules "are to be construed liberally in favor of broad pretrial discovery," *Payton, supra,* 148 *N.J.* at 535, 691 *A.*2d 321, because "[o]ur court system has long been committed to the view that essential justice is better achieved when there has been full disclosure so that the parties [may become] conversant with all the available facts," *Jenkins v. Rainner,* 69 *N.J.* 50, 56, 350 *A.*2d 473 (1976). Consequently, to overcome the presumption in favor of discoverability, a party must show "good cause" for withholding relevant discovery by demonstrating, for example, that the information sought is a trade secret or is otherwise confidential or proprietary. *See R.* 4:10–3; *Hammock by Hammock v. Hoffmann–LaRoche, Inc.,* 142 *N.J.* 356, 369, 662 *A.*2d 546 (1995). Not every proprietary claim will meet this standard. The party attempting to show that "secrecy outweighs the presumption" of discoverability must be "specific[ ] as to *each document*"; "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, are insufficient." *Id.* at 381–82, 662 *A.*2d 546.

In ruling on the discovery disputes in the Saint Peter's action, Judge Ciuffani invoked and applied these principles when he compelled a turnover of the discovery in question. In his opinion, which the Appellate Division quoted at length, *Capital Health, supra,* 446 *N.J.Super.* at 108–09, 140 *A.*3d 598, Judge Ciuffani thoroughly and logically explained why the McKinsey report and other information that illuminated Horizon's decision to place hospitals in either Tier 1 or Tier 2 were relevant to the claim that Horizon's "choice and application of criteria" lacked "a rational basis," and were relevant as well to whether Horizon "acted in good faith towards providers." *Id.* at 108, 140 *A.*3d 598. Even though, as the panel recognized, the judge later dismissed the claims of breach of fiduciary duty, consumer fraud, unfair competition, and equitable estoppel, *id.* at 109, 140 *A.*3d 598, the discovery

sought by Saint Peter's remained relevant to its claims that Horizon breached the terms of the NHA, as well as the implied covenant of good faith and fair dealing.

The panel recognized that the maintainability of plaintiffs' claims was not before it but nevertheless found it "[could] not avoid analyzing those claims in assessing the relevancy of the information" sought. *Id.* at 115, 140 *A.*3d 598. The panel's skeptical view of the merits—evidenced by the observation that the contractual claims "rest[ed] on the slenderest of reeds," *id.* at 116, 140 *A.*3d 598—was a basis for the panel's conclusion that the discovery in question was "not relevant," *id.* at 118, 140 *A.*3d 598. And the panel, without any discernible regard for the confidentiality orders, concluded that—"even if relevant"—plaintiffs' need for this discovery was "outweighed by Horizon's greater need to preserve the confidentiality of its proprietary business information." *Ibid.*

■ We conclude the Appellate Division exceeded the limits imposed by the standard of appellate review both by assessing the information's relevance against the panel's own disapproving view of the merits and by giving no apparent weight or consideration to the protections afforded by the confidentiality orders. Having closely examined the record, we reject the Appellate Division's determination that the chancery judges encharged with these matters abused their discretion. It was not an abuse of discretion for the chancery judges to find the information sought was relevant to plaintiffs' claims that Horizon violated either the NHA's contractual terms, or the overarching implied covenant of good faith and fair dealing, when they were relegated to the less desirable Tier 2.

In his initial decision compelling the turnover of the unredacted McKinsey report, Tier 1 hospital scores, Alliance agreements, and other related materials, Judge Ciuffani cogently explained, as recounted in the Appellate Division's opinion, *id.* at 107–09, 140 *A.*3d 598, the relevance of those items to the claims asserted. Although some of the pleaded causes of action, which formed part of that determination's foundation, have since been dismissed, the

judge's reasoning is equally applicable to the alleged breaches of the NHA's expressed and implied terms. Judge Ciuffani also recognized that the confidentiality order sufficiently protected Horizon's proprietary concerns. He amplified his reasoning when ruling on the later discovery disputes—a determination which led to the Appellate Division again granting leave to appeal. For example, as Judge Ciuffani explained in denying the motion to quash the subpoena issued by St. Peter's to McKinsey:

> McKinsey worked with Horizon at every stage of OMNIA's formation and development. McKinsey developed suggested structures for the proposed tiered network and, with Horizon, jointly developed the criteria that Horizon should consider in evaluating hospitals for the preferred Tier 1. McKinsey never suggested geographic exclusivity as a criterion and, in fact, proposed a model for OMNIA in Middlesex County that did not rely on having only one Tier 1 partner.

> Saint Peter's subpoenaed McKinsey to obtain documents related to its work for Horizon on the formation and development of OMNIA, including the development of the proposed structure of the tiered networks, the development of the criteria, and how and when that criteria changed. Saint Peter's is looking for information regarding the timing of when the hospitals were rated each time, the conversations between Horizon and McKinsey regarding the ratings, who at Horizon ordered the changes in criteria and their weights, and who at Horizon was involved in these discussions.

> Saint Peter's alleges that Horizon pre-selected RWJ as the Tier 1 partner for the Middlesex County area, and adjusted the criteria for Tier 1 participation to obtain a predetermined result. In so doing, Horizon [is alleged to have] breached the explicit terms of the [NHA], which guaranteed that Saint Peter's could participate in any new network, subnetwork, or product introduced by Horizon as long as it met the "criteria and standards" for participation. Horizon [is] also [alleged to have] breached the implied covenant of good faith by arbitrarily choosing criteria, and then changing them *ex post facto* in order to exclude Saint Peter's from the preferred Tier 1 network.

> The timing of changes to the criteria or the hospital ratings are all relevant to the preselection[-]of[-]partners theory and whether Horizon adjusted the criteria to obtain a predetermined result. Moreover, information on who at Horizon knew about [or] participated in these changes [or both,] in order to deprive Saint Peter's of its bargained-for right of participation is also relevant to [the claim of] Horizon's bad faith and its intent to harm Saint Peter's.

> The ... [c]onfidentiality [o]rder already in place in this action sufficiently protects any confidentiality interest Horizon purports to have in these documents.

In short, Judge Ciuffani found, as Judge Contillo similarly determined in the companion action, that discovery geared toward unmasking Horizon's methodology and particular determinations

during the selection process, as well as other information illuminative of Horizon's acts and intentions, was relevant to plaintiffs' contractual and implied-contractual claims, and that any legitimate claim asserted by Horizon, RWJ, or McKinsey that the material was proprietary would be adequately protected by the confidentiality order.[2]

The chancery judges' determinations were soundly and logically reached and should not have been second-guessed because the Appellate Division harbored a different view of the merits. We have never held that, when dissemination may be adequately protected by a confidentiality order, a party's right to relevant discovery is governed by a court's impression of that party's likelihood of success on the related claim or defense.

The orders under review in these interlocutory appeals are reversed, and the matters remanded to the trial courts for further proceedings.

CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA and ALBIN; and JUDGE FUENTES (temporarily assigned) join in JUDGE FISHER's opinion. JUSTICES PATTERSON, FERNANDEZ–VINA, SOLOMON, and TIMPONE did not participate.

---

[2] Whether the class of recipients of the specific rates—so far ordered turned over only "for the eyes of St. Peter's counsel"—might be appropriately expanded in the future is not before us.