**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4392-17T1

IN THE MATTER OF THE
ESTATE OF GERALDINE
FRANKLIN,

     Deceased.

_____

Argued telephonically December 18, 2019 –
Decided January 30, 2020

Before Judges Yannotti and Firko.

On appeal from the Superior Court of New Jersey, Chancery Division, Ocean County, Docket No. 211575.

Anthony DeFazio,[1] appellant, argued the cause pro se.

Christina Virginia Acker argued the cause for respondent Joel A. Davies, court appointed administrator of the Estate of Geraldine Franklin (Taff, Davies & Kalwinsky, attorneys; Joel A. Davies, of counsel; Christina Virginia Acker, on the brief).

PER CURIAM

---

[1] We note that DeFazio referred to himself as Steffan Anthony Franklin during a part of the trial court proceedings.

Anthony DeFazio appeals from orders entered in this action on May 7, 2018, which approved a proposed accounting submitted by the administrator of the estate, dismissed his order to show cause and verified complaint with prejudice, and denied other relief. We reverse and remand for further proceedings.

I.

We begin our consideration of this appeal with a summary of the relevant facts and procedural history. Geraldine Franklin died on August 5, 2015. She was survived by three children, DeFazio, Louise Soden, and Kelly Ann Bell. It appears that Soden claimed Ms. Franklin executed a will on June 5, 2015, which allegedly designated Soden as executrix or trustee of the estate. Soden sought to have the will admitted to probate.

On September 28, 2015, DeFazio filed an order to show cause and verified complaint in the Chancery Division, Probate Part. He asked the court to invalidate Ms. Franklin's "purported" will, disqualify Soden from serving as executrix or trustee of the estate, disqualify the attorney who allegedly prepared the will from participating in the proceedings as Soden's attorney, and grant other relief.

A-4392-17T1

On February 8, 2016, the judge issued an order, which denied without prejudice DeFazio's motion to disqualify Soden's attorney. The order set forth a schedule for discovery with a discovery end date of July 17, 2016. Soden's attorney later withdrew from the matter and filed a substitution of counsel, which stated that Soden would be thereafter representing herself.

On March 7, 2016, DeFazio served interrogatories and a demand for the production of documents upon Soden and Soden's former attorney. Thereafter, DeFazio issued additional discovery requests. On March 28, 2016, Bell filed motions to compel discovery and require Soden to pay the estate amounts she allegedly owed on a home equity loan. The judge heard oral argument and on May 12, 2016, entered an order denying Bell's motions. The judge referred the matter to mediation, which took place on June 14, 2016, but was unsuccessful.

It appears that Soden and Bell appeared in court on July 28, 2016, and DeFazio participated by phone because he was incarcerated.[2] The parties apparently agreed to a stipulation of settlement. DeFazio thereafter filed a motion to vacate the settlement agreement, compel discovery, and impose

---

[2] An order entered by the court in this action on April 13, 2017, states that DeFazio was sentenced on June 19, 1998 to a term of eighty-eight years of incarceration, with a thirty-year period of parole ineligibility.

A-4392-17T1

sanctions. He claimed he never agreed to the terms of the settlement and asked the court to vacate the agreement.

On October 3, 2016, the judge conducted a hearing on DeFazio's motion. Soden asserted that the judge should enforce the settlement. She also reported to the judge on the estate's assets. Soden told the judge Ms. Franklin had owned an automobile, but the parties had agreed to return the car because additional monies were owed for its purchase. Soden stated that Ms. Franklin also owned a house, which was encumbered by a home equity loan, and she had received a notice of intent to foreclose on the property. Soden did not know the assessed value of the property. She told the judge Ms. Franklin had other debts, which included credit card bills, bills for gas and electric service, and unpaid taxes.

The judge decided that the settlement agreement should be vacated. The judge gave the parties until October 17, 2016, to file a motion to compel discovery or resolve the discovery dispute. The judge also said he was considering the appointment of an independent administrator for the estate, who would have responsibility for the sale of Ms. Franklin's house.

On October 11, 2016, DeFazio filed a motion to reinstate his previously-filed motion to compel discovery and to impose sanctions. On October 17, 2016, the judge filed an order, which vacated the settlement agreement. The order also

4

stated that DeFazio's motion to compel discovery would be converted to an amended case management order.

In a separate order filed on October 17, 2016, the judge appointed Joel A. Davies as the independent temporary administrator of the estate. In the order, the court established a discovery end date of March 15, 2017, and set forth a schedule for discovery.

On November 16, 2016, DeFazio filed another motion to reinstate his motion to compel discovery and to impose sanctions for failing to comply with a court order. On December 12, 2016, DeFazio filed a motion asking the court to take judicial notice of certain statements Soden made at the October 3, 2016 hearing. On March 9, 2017, the surrogate's office informed the parties that Soden was no longer seeking to probate Ms. Franklin's alleged will, and that the estate would be finalized in accordance with the law of intestate succession.

On March 29, 2017, DeFazio filed another verified complaint. He asked the court to: appoint a permanent administrator, make certain distributions of the estate, deduct the amount outstanding on Ms. Franklin's home equity loan from Soden's share of the estate, provide Bell with title to Ms. Franklin's vehicle free of any debt, and distribute the remainder of the estate in equal shares to

himself, Soden, and Bell. Bell and her daughter, Samantha Koch, filed certifications in support of DeFazio's claims.

On April 13, 2017, the judge filed an order appointing Davies as permanent administrator for the estate. The judge dismissed DeFazio's demand for certain distributions of the estate's assets because DeFazio had not stated a claim for relief upon which such relief could be granted. In the order, the judge stated that Ms. Franklin's assets would be distributed in accordance with New Jersey's law on intestate succession.

The judge also ordered Davies to liquidate the estate's assets and submit a proposed accounting and plan for distribution. The order stated that any party in interest could file a proof of claim memorializing any debt or liability owed by the estate, and Davies could file objections to any such claims. In addition, the judge dismissed without prejudice DeFazio's claim that Ms. Franklin verbally intended to create a secret trust for his benefit.

On April 13, 2017, Davies informed the parties he intended to provide the court with the accounting and proposed distribution plan within sixty days after the closing on the sale of Ms. Franklin's home. The closing occurred on May 23, 2017. In addition, in May 2017, Ms. Franklin's car was repossessed, but additional monies were owed for its purchase.

6

On September 28, 2017, Davies served the parties with a proposed accounting and distribution plan. In a letter dated October 3, 2017, DeFazio asked Davies to decide whether Soden was liable to repay Ms. Franklin's home equity loan. DeFazio claimed that during the October 3, 2016 court proceeding, Soden had admitted Ms. Franklin had taken out the home equity loan for Soden's benefit and that the debt was her debt.

On October 5, 2017, Davies wrote to Soden and asked her to respond to DeFazio's claim regarding the home equity loan. The following day, DeFazio wrote to Davies and asserted that he may be under the mistaken belief that a joint bank account in the names of Ms. Franklin and Soden was a non-estate asset.

DeFazio and Soden thereafter wrote to Davies. Their letters indicated that they disagreed on whether Soden was liable for the home equity loan and whether the money in Ms. Franklin's joint account with Soden was an asset of the estate. Davies informed DeFazio, Soden, and Bell that if they could not agree on the accounting and proposed distribution of the estate, he would be compelled to bring the matter to the court for a decision.

On December 5, 2017, DeFazio filed another verified complaint and order to show cause. He claimed, among other things, that Soden had agreed she was

7

liable for Ms. Franklin's home equity loan. He also claimed the monies in the joint bank account were estate assets and not an inter vivos gift from Ms. Franklin to Soden.

DeFazio sought, among other relief, to compel Davies to deduct the outstanding balance of about $22,500 on the home equity loan from Soden's share of the estate, and to include in the estate's assets about $8000, which had been on deposit in the joint account. DeFazio also asked the court to issue a discovery schedule, request a specific distribution of the estate, disqualify Davies from serving as administrator, and appoint a different administrator.

The surrogate's office entered an order dated December 7, 2017, which required the parties to show cause why the relief DeFazio sought in his verified complaint should not be granted. Soden and Davies thereafter filed answers to the complaint. Davies also filed a verified complaint seeking approval of his accounting and proposed distribution plan.

DeFazio then filed a motion to strike Soden's and Davies's answers to his complaint. He also filed exceptions to the accounting and distribution plan. Among other things, DeFazio asserted that Soden was liable for Ms. Franklin's home equity loan, and that the monies in Ms. Franklin and Soden's joint account were assets of the estate.

A-4392-17T1

On May 7, 2018, another Chancery Division judge conducted a hearing in the matter and thereafter entered orders which: denied DeFazio's motion to strike Davies' and Soden's answers to his verified complaint, and denied DeFazio's motion to take judicial notice of Soden's previous statements. The judge also dismissed with prejudice DeFazio's motions to compel an accounting, request a specific distribution of the estate's assets, permit additional discovery, disqualify Davies, and appoint a new administrator.

In addition, the judge granted Davies' application for approval of the proposed accounting, awarded Davies counsel fees, and denied DeFazio's application for a stay pending appeal. The judge stated that the applications for relief, except for the request for an accounting, had been previously litigated and decided by the court. This appeal followed.

On appeal, DeFazio argues that the trial court erred by approving the accounting without allowing discovery and permitting him to call witnesses. He contends there are material issues of fact as to whether the monies in the joint bank account passed to Soden on Ms. Franklin's death.

DeFazio also argues that the trial court erred by not charging the balance due on Ms. Franklin's home equity loan against Soden's share of the estate. In addition, he contends he was denied due process because the trial court did not

allow him to conduct discovery, refused to take judicial notice of Soden's prior statements, and failed to strike Davies' and Soden's answers to his complaint.

## II.

We first consider DeFazio's contention that the trial court erred by denying his request for discovery. On appeal, "we accord substantial deference to the trial court's disposition of a discovery dispute." Brugaletta v. Garcia, 234 N.J. 225, 240 (2018) (citing Capital Health Sys., Inc. v. Horizon Healthcare Servs., Inc., 230 N.J. 73, 79-80 (2017)). Ordinarily, we will not reverse a trial court's order on discovery "absent an abuse of discretion or a judge's misunderstanding or misapplication of the law." Ibid. (quoting Capital Health Sys., 230 N.J. at 79-80).

Here, the trial court denied DeFazio's motion for discovery. In her decision of May 7, 2018, the judge found that DeFazio had ample time for discovery. The judge stated that in the October 17, 2016 order, the court had established a timetable for discovery with a discovery end date of March 15, 2017, and the court had previously addressed DeFazio's motion to compel discovery.

The record does not, however, support the court's findings. Although the trial court did, in fact, afford all parties ample time in which to engage in

10 A-4392-17T1

discovery, the court never addressed DeFazio's motions to compel discovery. The record shows that in March 2016, DeFazio served interrogatories and a demand for the production of documents on Soden and her attorney. DeFazio claims Soden and her attorney did not respond to the discovery requests.

On May 18, 2016, DeFazio filed a motion to compel Soden and her attorney to comply with the discovery requests. The trial court entered an order dated October 17, 2016, which stated that DeFazio's motion would be converted to a case management order. As we have explained, the accompanying order dated October 17, 2016, extended the time for discovery to March 15, 2017, and established dates for the completion of various forms of discovery. On November 16, 2016, DeFazio filed a motion to reinstate his earlier motion to compel Soden and her attorney to comply with his discovery requests. The trial court never addressed that motion.

We note that there is some doubt as to whether our court rules allow DeFazio to demand answers to interrogatories or the production of documents from Soden's attorney, since he was not a party to the proceeding. See R. 4:17-1(a) (allowing a party to serve interrogatories on "any other party"); R. 4:18-1(a) (a party may serve a demand for the production of documents on "any other

party").  We also note that Soden's attorney may have had other grounds to object to DeFazio's discovery request.

In any event, it appears from the record before us that the trial court did not rule on DeFazio's motion to compel discovery, which was timely filed within the period allowed for discovery.  We therefore remand the matter to the trial court to address the motion.  We express no opinion on whether the motion should be granted.

III.

We turn to DeFazio's argument that the trial court erred by finding that the monies in Ms. Franklin's and Soden's joint bank account became Soden's property upon Ms. Franklin's death.  DeFazio contends there were material issues of fact as to whether Ms. Franklin established the account with Soden for convenience purposes, and whether she intended to make an inter vivos gift of the monies in the account to Soden.

We note that factual determinations "made by the trial court sitting in a non-jury case are subject to a limited and well-established scope of review." Seidman v. Clifton Sav. Bank, S.L.A., 205 N.J. 150, 169 (2011) (citing In re Trust Created by Agreement Dated Dec. 20, 1961, ex. rel. Johnson, 194 N.J. 276, 284 (2008)).  We will not "disturb the factual findings and legal conclusions

A-4392-17T1

of the trial judge unless we are convinced they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Ibid. (quoting In re Trust, 194 N.J. at 284).

Here, the judge found that the monies in the joint account passed to Soden upon Ms. Franklin's death pursuant to N.J.S.A. 17:16I-5(a), which states that

> [s]ums remaining on deposit at the death of a party to a joint account belong to the surviving party or parties as against the estate of decedent unless there is clear and convincing evidence of a different intention at the time the account is created.

As we noted in Estate of Ostlund v. Ostlund, 391 N.J. Super. 390, 400 (App. Div. 2007), the statute requires clear and convincing proof that at the time the account was opened, the decedent did not intend that monies remaining on deposit at the time of death should pass to the surviving party. We observed that "[c]lear and convincing evidence 'should produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established.'" Ibid. (quoting In re Purrazzella, 134 N.J. 228, 240 (1993); Aiello v. Knoll Golf Club, 64 N.J. Super. 156, 162 (App. Div. 1960)).

In Oustland, we also stated that there is an alternative basis for determining ownership of a joint bank account upon the death of one of the named parties. Id. at 401. We observed that if the party claiming ownership of

13

the account "can prove by a preponderance of the evidence that the survivor had a confidential relationship with the donor who established the account, there is a presumption of undue influence which the survivor donee must rebut by clear and convincing evidence." Ibid. (citing Petruccio v. Petruccio, 205 N.J. Super. 588, 580-81 (App. Div. 1985); Pascale v. Pascale, 113 N.J. 20, 30-32 (1988); In re Estate of Penna, 322 N.J. Super. 417, 426 (App. Div. 1999)).

We noted that "the mere existence of family ties does not create . . . a confidential relationship." Id. at 401-02 (quoting Vezzetti v. Shields, 22 N.J. Super. 397, 405 (App. Div. 1952)). The test is "whether the relations between the parties are of such a character of trust and confidence as to render it reasonably certain that one party occupied a dominant position over the other and that consequently they did not deal on terms and conditions of equality." Id. at 402 (quoting Blake v. Brennan, 1 N.J. Super. 446, 454 (Ch. Div. 1948)).

We added that the factors to be considered in determining whether a confidential relationship existed include "whether [the individuals] are dealing on terms of equality, whether one side has superior knowledge of the details and effect of the proposed transaction based on a fiduciary relationship, whether one side has exerted over-mastering influence over the other or whether one is weak

or dependent." Ibid. We emphasized that the test is "fact-sensitive" and it "focuses on the equality of the parties with respect to each other." Ibid.

Here, DeFazio claims that at the time the joint account was opened, Ms. Franklin did not intend that the monies on deposit in the account would become Soden's property upon Ms. Franklin's death. In his certification dated September 24, 2017, DeFazio stated that Soden had been employed in the banking industry for many years. He asserted that because Ms. Franklin was ill and his sister had knowledge of banking, Ms. Franklin relied upon Soden to set up the account "and did so for convenience to have [Soden] assist her in paying bills among other things and to have access to the money should something happen to her." He claimed the money in the account was his mother's money.

Soden disputed DeFazio's allegations regarding the account. In a letter to Davies dated October 16, 2017, Soden stated that she and her mother opened the account "many years ago." Soden said her mother intended that she would have access to the money in the account "for all purposes," which included withdrawals to pay bills, purchase food, buy lunch for her children, and pay herself and her children "for doing things" around her mother's home. In addition, Soden stated that from February 21, 2014 to July 17, 2015, she had $90 per week deposited into the account from her earnings.

15

As noted, the judge ruled that the monies in the account passed to Soden on Ms. Franklin's death pursuant to N.J.S.A. 17:16I-5(a), presumably finding that DeFazio had not submitted clear and convincing evidence that Ms. Franklin intended the monies would be part of the estate. The judge did not, however, address DeFazio's contention that Soden had a confidential relationship with his mother, which gave rise to a presumption that she exercised undue influence with regard to the disposition of the account.

In his discovery motion DeFazio apparently is seeking additional information from Soden regarding the account. If on remand, the judge grants DeFazio's motion to compel discovery, Soden may provide information that could have a bearing upon whether the account passed to Soden pursuant to N.J.S.A. 17:16I-5(a), and whether Soden had a confidential relationship with her mother and exercised undue influence with regard to the account.

We therefore remand the matter to the trial court for further proceedings regarding the disposition of the account. On remand, the trial court shall reconsider its determination that DeFazio failed to establish by clear and convincing evidence that Ms. Franklin did not intend the monies in the account would pass to Soden on her death. The court also shall determine if DeFazio has established that Soden had a confidential relationship with Ms. Franklin, and

16

if so, if Soden has shown by clear and convincing evidence that she did not exercise undue influence with regard to the joint account.

IV.

DeFazio further argues that the trial court erred by finding that Soden was not liable for repayment of Ms. Franklin's home equity loan. The record shows the estate paid $22,569.55, which was the outstanding balance on the loan. As noted previously, DeFazio contends Davies should have deducted that amount from Soden's share of the estate.

The loan was discussed in the trial court's hearing of October 3, 2016, on DeFazio's motion to vacate the settlement allegedly reached during mediation. At that hearing, Soden stated that her mother wanted Bell to have her car because Soden had "an equity loan," which she "was paying back." Soden said she had consulted a lawyer, who purportedly told her she did not have to repay the loan.

Soden also discussed the loan in her letter to Davies dated October 9, 2017. In that letter, Soden stated that in 2013, Ms. Franklin took out the home equity loan in her name only. According to Soden, Ms. Franklin used the money she borrowed to pay off "a bill" and to loan Soden money so that she could pay some of her bills. Soden said she had an oral agreement with her mother to "pay

A-4392-17T1

as much as [she] could to help [her mother] out with the monthly payment[s]." She claimed that after her mother became ill, she "said the loan would be a gift."

DeFazio responded in a letter to Davies dated October 16, 2017. He stated that Soden previously had acknowledged she had a written agreement with her mother, which Soden and Ms. Franklin allegedly tore up. DeFazio claimed there was an agreement, written by his mother, which had been preserved on her computer. He stated he previously provided a copy of the agreement, which both parties had signed. He asserted his mother never converted the loan to a gift, as Soden claimed.

In another letter to Davies, dated October 23, 2017, DeFazio stated the loan was made on December 4, 2013, as was the date of the written loan agreement that his mother and Soden had signed. He said the loan was for $23,916.20, and Soden agreed to pay to Ms. Franklin $325.25 a month for seven years.

At the May 7, 2018 hearing before the trial court on the exceptions to the accounting, Soden stated she never signed any paper regarding the loan. She said that when her mother was preparing her will, she said she wanted to give Bell her car, but her attorney told her "that's not really even." According to Soden, her mother said, "Well, there's a loan that I gave Louise some money for,

but I'm not letting her pay that, and [I'm] making it even because the amounts [are] even."  Soden stated:

> It wasn't something that I had to pay after she died. . . . [W]hen she was living, I tried to give her as much money as I could because it was my debt.  But it wasn't something that she said that, "Louise, you have to pay this after I die."  It was coming out of her home after the home was sold, and that was it. . . .

In her decision of May 7, 2018, the judge overruled DeFazio's exception to the accounting and distribution plan.  The judge found that the estate had properly paid the home equity loan and Soden was not obligated to repay the estate.  The judge noted that the only document before the court was the loan agreement that Ms. Franklin had signed.

After he filed his notice of appeal, DeFazio executed a certification in support of his appeal in an apparent attempt to supplement the record on appeal.  See R. 2:5-4(a) (record on appeal consists of all papers on file in the trial court).  In his certification, DeFazio reiterated the statements made in letters to Davies.  He also attached a copy of the document, which Soden and his mother purportedly signed.

The document states that Ms. Franklin had loaned Soden $23,916.20, and Soden agreed to repay Ms. Franklin $325.25 a month for seven years, beginning December 5, 2012.  The document includes a signature for "Louise Soden" and

one for "Geraldine Franklin." This document was never submitted to the trial court. Moreover, the date on the purported agreement appears to be different than the date of Ms. Franklin's home equity loan, and the amounts are different.

During the May 7, 2018 hearing, Bell stated that she found an unsigned document on her mother's computer. She said she did not have the signed document evidencing Soden's agreement to pay the loan because Soden had taken all of her mother's papers. Soden told the court she never signed any papers. It is unclear on this record when DeFazio obtained the copy of the alleged loan agreement, which was purportedly signed by Soden and his mother.

We are constrained to remand the matter for reconsideration of the trial court's finding that Soden did not have any obligation to pay Ms. Franklin's home equity loan. If the court grants DeFazio's discovery motion and Soden produces additional information regarding the loan, it may have a bearing on the court's determination. In addition, the court should determine whether it should consider the loan agreement purportedly signed by Soden and Ms. Franklin, because it was not previously submitted to the trial court and has not been authenticated.

The trial court also should determine whether the evidence presents a genuine issue of material fact as to whether the monies in the joint account

belong to Soden, or whether Soden is liable for the home equity loan. The court should determine whether a plenary hearing is required to resolve any such disputed issue of fact. The court should afford the parties an opportunity to be heard and thereafter issue a decision with appropriate findings of fact and conclusions of law.

We have considered the other arguments raised on appeal and conclude they are of insufficient merit to warrant discussion in this opinion. R. 2:11-3(e)(1)(E).

Reversed and remanded to the trial court for further proceedings in conformity with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION