**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1084-23

JILL DEVITO and LEONARD
DEVITO,

     Plaintiffs-Respondents,

v.

151 ROUTE 72, LLC,

     Defendant-Respondent.

_____

IME PLUS and DOREEN
NISIVOCCIA,

     Appellants.

_____

Argued February 12, 2024 – Decided April 18, 2024

Before Judges DeAlmeida and Berdote Byrne.

On appeal from interlocutory orders of the Superior Court of New Jersey, Law Division, Ocean County, Docket No. L-0406-21.

Thomas N. Gamarello argued the cause for appellants (Schenck, Price, Smith & King, LLP, attorneys; Thomas N. Gamarello, on the brief).

Daniel M. Santarsiero argued the cause for respondents Jill Devito and Leonard Devito (Law Offices of Jonathan F. Marshall, attorneys; Daniel M. Santarsiero, on the brief).

PER CURIAM

On leave granted, appellants IME Plus (IMEP) and IMEP's CEO Doreen Nisivoccia appeal from the trial court's October 6, 2023 order denying their motion to quash plaintiffs Jill and Leonard DeVito's Subpoena Duces Tecum and the court's October 6, 2023 order granting plaintiffs' motion to enforce litigants' rights. Because we find the trial court misapplied the law and abused its discretion in finding the subpoenas were not unduly burdensome, we reverse the trial court's orders.

I.

We glean the following facts from the record. IMEP is a medical business that conducts independent medical examinations (IMEs), primarily on behalf of defendants involved in personal-injury lawsuits. IMEP was retained by defendant 151 Route 72, LLC in the underlying action to conduct an IME of Jill DeVito. DeVito's IME was performed by Dr. Behnam Salari, D.O., of IMEP, who opined DeVito would not require any future medical treatment. At his deposition, Salari confirmed he had an ownership interest in IMEP, and stated

2

this business venture is separate from his practice as a spinal surgeon. Salari also explained the examinations he conducts on individuals at IMEP are typically different from those conducted in his clinical practice.

When asked at his deposition approximately how many IMEs he conducts monthly, Salari estimated he performs between eight and forty, depending on his schedule. With regard to DeVito's IME, Salari stated he charged $1,400 for the initial report and another $850 for the addendum. He also admitted the "vast, vast majority" of the IMEs he performs are on behalf of defendants in lawsuits.

On or about August 18, 2023, plaintiffs issued a Subpoena Duces Tecum and Ad Testificandum upon appellants with a corresponding notice to take the oral deposition of Nisivoccia. The subpoena requested "copies of all reports, billing documentation, and calendar documentation pertaining to examinations conducted by Dr. Benham [sic] Salari from January 1, 2022 through June 1, 2023." Counsel for appellants and plaintiffs communicated shortly thereafter and appellants sought to provide a certification that would include the information sought by the subpoena. Plaintiffs rejected this alternative and offered to extend the subpoena's response time by two weeks if appellants agreed to provide fully responsive answers.

3

Appellants refused to comply with the subpoena, explaining Salari conducted approximately 596 IMEs within the subpoena's requested timespan and "production of those reports, which will all need to be extensively redacted, will be extremely burdensome and will not be possible" by the deadline. Further, appellants believed the subpoena exceeded the scope of discovery and there was no strong need for the information requested.

Appellants moved to quash the subpoena and plaintiffs cross-moved to enforce litigants' rights. Mandy McLaughlin, IMEP's paralegal and Senior Business Development Specialist, certified she is the person who would be principally responsible for overseeing the response to the subpoena. McLaughlin's certification stated each of Salari's IME reports are between five to twelve pages and, given the need to redact every patient's personal health information (PHI), it would take her between eighty and 119 hours to redact information and provide the requested documentation.

At oral argument, plaintiffs asserted appellants' claim of 596 IME did not make sense mathematically. They also claimed because Salari provided a wide range in the number of IMEs he performed in a month -- between eight and forty -- his testimony was also "somewhat suspect" given the fact 596 IMEs would come out to approximately thirty-five IMEs per month. Plaintiffs acknowledged

Salari had admitted to conducting the vast majority of the IMEs on behalf of defendants for litigation purposes, however, they stated they were unaware if he ever conducted an IME on behalf of a plaintiff, or "whether or not any of the reports are such that even if he was hired by a defendant, he still performed an honest evaluation."

The trial court interjected and stated:

> [T]hese [arguments] are coming up more and more . . . . And the argument, of course, is that these [medical experts] are hired guns. Okay? And that if they are tasked with . . . doing a defense medical exam and they routinely start finding . . . permanent injuries . . . they're not going to get any more work. . . . [T]here's competing interest[s] here. One is you don't want plaintiff's attorneys rummaging through IME reports of people who were, I call them -- they're defense reports. I was plaintiff's counsel. I always -- it sticks in my craw when they say . . . independent exams.
>
> We[] . . . all know those doctors who show up routinely that they seem to have a bias. . . . [T]hey point out . . . on an MRI a disc that's blown out . . . and say[] no that's -- that's not . . . a ruptured disc.

The court acknowledged discovery from an expert is not without limitation and cannot be designed to force an expert into conceding bias, citing Gensollen v. Pareja, 416 N.J. Super. 585 (App. Div. 2010). It also acknowledged discovery typically should be curtailed once an expert provides sufficient information to permit the requesting party to argue before the

5

factfinder that the expert is a "professional witness" or "hired gun" who offers opinions to vindicate a particular position. However, the trial court then inexplicably limited Gensollen to "personal tax returns and stuff like that." The court stated that in prior instances, it had allowed discovery into a medical expert's prior IME reports "especially if they're doing this as a living . . . ." According to the court, an expert cannot avoid discovery into the matter by simply relying upon the large volume of IMEs performed and failing to organize them.

In support of its motion to quash, appellants argued they should be permitted to submit a certification with the data plaintiffs requested. The trial court interposed:

> [T]hat goes to the point. See, I always like this. . . . [T]he hardest thing for anybody to say . . . when you're on the stand and says -- basically what you're saying is you're calling the witness a liar, isn't that true? And they just can't say it. What the plaintiff should say doesn't believe you're a doctor and so what purpose would it serve for anybody to specifically say we are not going to filter through our bias what happened. . . . [L]et's see the reports themselves. . . . I don't believe they're -- I'm not going to trust their analysis . . . .

When appellants again offered to provide a certification with all the desired information and noted the certification would be provided under penalty of perjury, the court rebuffed appellants. In two orders dated October 6, 2023, the

6

trial court denied appellants' motion to quash and granted plaintiffs' motion to enforce litigants' rights. It also denied appellants' subsequent motion to stay the order.

We granted appellants' motion for leave to appeal the two October 6, 2023 orders and subsequently entered a stay of those orders pending appeal.

II.

We generally defer to the trial court's rulings on discovery, unless the court abuses its discretion, or misunderstands or misapplies the law. Est. of Lasiw ex rel. Lasiw v. Pereira, 475 N.J. Super. 378, 392 (App. Div. 2023) (quoting Cap. Health Sys., Inc. v. Horizon Healthcare Servs., Inc., 230 N.J. 73, 79-80 (2017)). Although our discovery rules favor broad pretrial discovery in light of their liberal construction, ibid. (quoting Cap Health Sys., 230 N.J. at 80), discovery is not limitless, id. at 464. Additionally, demands for discovery from a non-party should be "closely scrutinize[d]." Lipsky v. N.J. Assoc. of Health Plans, Inc., 474 N.J. Super. 447, 467 (App. Div. 2023).

On appeal, appellants contend the trial court failed to properly apply Gensollen, and production of the 596 IME reports is unduly burdensome, needlessly duplicative, and risks compromising the PHI of hundreds of individuals unaffiliated with the underlying case. We agree.

7

Appellants assert, based on McLaughlin's certification, it would take anywhere from approximately eighty to 119 hours to redact all the PHI contained in the IMEs sought by plaintiffs. This does not include the time it would take to convert the files into a bates-stamped electronic format. By comparison, appellants argue "there is no discernible 'strong need' for the production of the 596 IME reports that would outweigh the extreme burden on [appellants] in producing them."

Appellants maintain plaintiffs have the desired bias evidence necessary to make the argument to the factfinder. Salari testified the vast majority of his IME reports were conducted on behalf of defendants. According to appellants, plaintiffs' only argument to the contrary is that they dispute the number of estimated reports he conducted. This was both improperly before the trial court during oral argument as it was absent from their brief, and inapposite to the issue at hand. Appellants are concerned if the reports are provided, even with redactions, "the risk of 'reverse engineering' to fill in the blanks by unscrupulous actors remains." Appellants themselves would also risk unnecessary disclosure of confidential business information and their referral sources. Finally, appellants contended the subpoena was issued several months after the discovery end date (DED), relying upon the February 17, 2023 order in which

the trial court extended the DED until April 14, 2023. Plaintiffs did not serve appellants with the subpoena until August 18, 2023. Because plaintiffs provided no justification for the delay, it is untimely and therefore should have been quashed.

In opposition, plaintiffs maintain the specific IME reports are necessary to establish bias. "The mere fact . . . Salari confirmed during his deposition that [appellants'] paying customers are overwhelmingly defendants does not necessarily lead to any conclusion regarding the fairness or independence of that business's eventual work product." Plaintiffs also argue we should not reward appellants for structuring their business in a way where one employee is responsible for processing subpoenas issued to an entity that has eleven different locations.

The attendance of a witness may be compelled by subpoena and may command that person to produce "designated books, papers, documents or other objects which constitute or contain evidence relating to all matters within the scope of examination permitted by Rule 4:10-2." R. 4:14-7(a). These subpoenas are subject to the respective protective provisions of Rule 1:9-2 and Rule 4:10-3. R. 4:14-7(a). A party may either move to quash or modify a subpoena "if compliance would be unreasonable or oppressive," R. 1:9-2, or move for a

9

protective order for good cause shown to protect the subpoenaed party "from annoyance, embarrassment, oppression, or undue burden or expense," R. 4:10-3. We review both in the same manner. Horon Holding Corp. v. McKenzie, 341 N.J. Super. 117, 118 (App. Div. 2001); Kerr v. Able Sanitary & Env't Servs., Inc., 295 N.J. Super. 147, 155 n.4 (App. Div. 1996); see Trenton Renewable Power, LLC v. Denali Water Sols., LLC, 470 N.J. Super. 218, 222, 226, 229-30 (App. Div. 2022) (evaluating motions to quash and for a protective order under the same standard).

Generally, discovery is limited to any facts relevant to the subjects raised in the pleading, and information "reasonably calculated to lead to the discovery of admissible evidence . . . ." R. 4:10-2(a). Rule 4:10-2(g) further empowers the court to limit discovery if it determines

> (1) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some source that is more convenient, less burdensome, or less expensive; (2) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (3) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

These concerns are particularly relevant when discovery is sought from a non-party. Lipsky, 474 N.J. Super. at 467; Trenton Renewable, 470 N.J. Super. at 231. In Lipsky, we favorably quoted Berrie v. Berrie, 188 N.J. Super. 274, 284 (Ch. Div. 1983), which considered "the interest of the [non-party] in the outcome of the litigation, the necessity or importance of the information sought in relation to the main case, . . . [and] the significance of the rights or interests which the nonparty seeks to protect by limiting disclosure . . . ." 474 N.J. Super. at 467.

Discovery into an expert's positional bias is further limited. A party is entitled to explore the issue of bias, but discovery should cease "once the expert provides information that would permit the requesting party to argue to a factfinder that the expert is a 'professional witness' or 'hired gun' who mostly offers opinions that largely seek to vindicate a particular position." Gensollen, 416 N.J. Super. at 590.

It is undisputed the IMEs requested do not relate to Jill Devito or her medical condition. They do not relate to the subjects raised in the pleadings. Plaintiffs concede they seek the IMEs for the sole purpose of establishing the expert's bias. The subpoena requested "copies of all reports, billing documentation, and calendar documentation pertaining to examinations conducted by [Salari] from January 1, 2022 through June 1, 2023" a period of

11

eighteen months. The trial court did not engage in any analysis of the burden imposed upon the non-party in responding, or weigh that burden against the plaintiffs' expressed need for the IMEs.

Instead, the trial court incorrectly limited the scope of Gensollen to tax returns and other financial documentation, without providing legal support for such a strict reading. The question before us in Gensollen was "the extent to which a party may inquire into an expert's finances and litigation history in gathering information to prove at trial the expert's positional bias." Id. at 587 (emphasis added). In Gensollen, we found the trial court abused its discretion when it compelled an expert to produce documentation "that would more precisely reveal the percentage of his work that is defendant-related, the frequency with which he has found plaintiffs to have sustained permanent injuries, and the amount of income derived from performing [IMEs]." Ibid.

Gensollen is directly on point with the documents sought here, and is not limited to financial information. Salari confirmed at his deposition the "vast, vast majority" of his IMEs are conducted on behalf of defendants in litigation. In Gensollen, we found there was no need for further discovery after the defendant's expert acknowledged over ninety-five percent of his litigation work was for defendants. Id. at 587. Discovery is permitted on the issue of expert

12

bias until the requesting party can make an argument of bias to the factfinder. Id. at 590. An expert's truthful estimate into the ratio or percentage of plaintiff-to-defendant opinions is sufficient. Id. at 591-92.

Plaintiffs asserted the information was sought because they doubted the total number of IMEs Salari conducted on behalf of defendants as opposed to plaintiffs. Plaintiffs had the opportunity to ask further questions during Salari's deposition if they were unsatisfied with his initial answers. The only argument plaintiffs advance on appeal is that they cannot conclude with any certainty whether Salari's IME was conducted fairly and independently. "Absent a more concrete presentation, an attorney's nonspecific, anecdotal contentions cannot provide an adequate basis for intervention into an expert's private information" beyond what is ordinarily permitted. Id. at 593 n.3.

The trial court wholly failed to conduct the required analysis of the burden, expense, and legal risk plaintiffs sought to impose upon non-party appellants, which far exceeds any incremental benefit plaintiffs would receive given Salari's admissions at his deposition. It failed to consider the risk and expense to appellants of training personnel to conduct accurate redactions to ensure appellants safely met their confidentiality obligations to their other

A-1084-24

patients pursuant to The Health Insurance Portability and Accountability Act of 1996, Pub. L. 104-191, 110 Stat. 1936 (HIPPA).

Plaintiffs' subpoena is unduly burdensome. The expense appellants would incur to perform the required extensive redactions and review to ensure HIPPA is not violated far outweighs the value of any admissible, probative evidence emanating from the materials sought. "The discovery rights provided by our court rules are not instruments with which to annoy, harass or burden a litigant or a litigant's experts." Gensollen, 416 N.J. Super at 246.

More importantly, plaintiffs' professed reason for needing the IMEs is beyond the scope of permissible discovery. Gensollen is directly on point with the facts of this case and the trial court's decision to limit Gensollen to only financial discovery lacks any legal basis.

Reversed. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1084-24