188 N.J. Super. 274 (1983)
457 A.2d 76
RUSSELL BERRIE, PLAINTIFF,
v.
KATHY BERRIE, DEFENDANT.
Superior Court of New Jersey, Chancery Division Bergen County.
Decided January 7, 1983.
*276 Sidney Slauson, for plaintiff (Theodore Sager Meth of counsel and on the brief).
Sheldon Liebowitz, for defendant (Liebowitz, Liebowitz & Clarke, attorneys).
Edward J. Nowakoski, for Wallace Berrie (Kraft & Hughes, attorneys).
HAMER, J.J.D.R.C. (temporarily assigned).
The issue presented here is the extent to which a nonparty should be compelled to disclose in discovery proceedings information which the deponent considers confidential but which may provide collateral or supportive evidence of the value of a property subject to equitable distribution in the present case. The question is raised on a motion by Wallace Berrie, plaintiff's brother, to quash a subpoena duces tecum. The motion to quash is granted.
*277 It now appears that some years ago plaintiff Russell Berrie and his brother Wallace Berrie were in the toy business together. There was a parting of the ways on apparently less than cordial terms. Since then, the fraternal relationship has been estranged. Wallace moved to California and established Wallace Berrie & Co., Inc. Russell Berrie, plaintiff here, is the president and owner of 80% or more of the capital stock of Russ Berrie & Co., Inc., headquartered in New Jersey. In this divorce action against his wife, defendant Kathy Berrie, Russell Berrie's business interests are subject to equitable distribution. N.J.S.A. 2A:34-23.
Russ Berrie & Co., Inc. and Wallace Berrie & Co., Inc. are both in the business of distributing toys and novelties. Neither is a public corporation. For at least the past ten years the companies have been major and fierce competitors. Within the past year Wallace Berrie sold his minority shareholder interest in the California company to the two remaining principals.
When it was learned that Wallace would be in New Jersey for a family wedding, plaintiff sought leave to take his deposition "in connection with the financial issues raised by the present proceedings; ...." The purported basis of the application was that Wallace "engaged in a very similar or identical [business] to that of his brother, plaintiff in this case" and that the recent sale of his interests "would constitute the closest and most useful comparable for the purpose of the determination by this Court ... of the market value of plaintiff's business interest." Although there was no reference thereto in the application, R. 4:79-5 prohibits taking the deposition of a nonparty in a matrimonial action except by leave of the court for good cause shown. The certification of plaintiff's counsel stated:
It probably is so that the person whose deposition is sought to be taken would not willingly give any information concerning said sale unless he is served within the State of New Jersey which subpoena was issued pursuant to an order of this Court.
Wallace Berrie had no notice that plaintiff was seeking leave of the court to depose him. Defendant did oppose the request on the basis that the information was irrelevant and immaterial.
*278 When pretrial discovery is sought to be restricted, the principle generally applied permits the widest latitude in the use of discovery tools, Blumberg v. Dornbusch, 139 N.J. Super. 433 (App.Div. 1976); Meyers v. St. Francis Hosp., 91 N.J. Super. 377 (App.Div. 1966); Martin v. Educational Testing Service, Inc., 179 N.J. Super. 317, 327 (Ch.Div. 1981), where the information sought will aid in the preparation of the case or otherwise facilitate proof of progress at trial. Bzozowski v. Penn.-Reading Seashore Lines, 107 N.J. Super. 467, 473 (Law Div. 1969). "Parties may obtain discovery regarding any matter not privileged, which is relevant to the pending action." R. 4:10-2(a). The relevance standard does not refer only to matters which would necessarily be admissible in evidence but includes information reasonably calculated to lead to admissible evidence. Stout v. Toner, 125 N.J. Super. 490 (Law Div. 1973); Pressler, Current N.J. Court Rules, Comment R. 4:10-2 (1983). Carefully conducted discovery can significantly reduce or even eliminate factual disputes otherwise requiring resolution at trial.
Valuation of plaintiff's interest in Russ Berrie & Co., Inc., is a material fact in the ultimate disposition of this case. He asserts that evidence of a comparable sale is one method of proving such value. Evidence concerning comparable sales is generally part of the testimony of an expert witness. See N.J. Sports & Exposition Auth. v. Cariddi, 84 N.J. 102, 104 (1980). Comparable sales are not necessarily direct indicia of value but are offered as supportive of the reasoning by which the expert arrives at his opinion of value. It is the opinion, not the value of the comparable, which is the direct or primary evidence. Trenton v. Penn.-Jersey Auto Stores, Inc., 90 N.J. Super. 221, 224 (App.Div. 1966). While the cases cited and most reported decisions concerning comparable values involve real property, logic would not exclude the approach in other evaluations. The market value of shares of stock of corporations listed on a stock exchange can be determined by reference to published market reports, i.e., comparable sales. See In re Romnes Estate, 79 N.J. 139, 145 (1978). The use of this approach to value a closely held corporation no *279 doubt has practical difficulties but is theoretically possible. While the value of Wallace Berrie & Co., Inc. is not direct evidence of a material fact, such value, if proven, and if the two companies are shown to be "comparable," may be relevant in establishing the value of Russ Berrie & Co., Inc.
Without considering but without foreclosing at that time a possible objection by Wallace to disclosing anything, this court concluded that the information sought could be or could lead to relevant evidence of a material fact. Therefore, an order was entered permitting Wallace to be subpoenaed for deposition purposes. The subpoena was required to be accompanied by a copy of the order which included the following:
This application has been considered and this order is granted solely on the basis that R. 4:79-5 requires permission of the court to depose one who is not a party to the action. This order shall not be construed as directing or requiring that Wallace Berrie disclose any confidential information.
Any uncertainty about Wallace's legal response to the subpoena quickly disappeared. The application to quash ensued immediately. His affidavit and the affidavit of Harris Toibb (one of the two remaining principals and a 50% owner of the California company) allege that the information sought may be irrelevant and immaterial and is "confidential, corporate and financial information." They state that although there are some similarities between the two companies, the dissimilarity of the ownership interests of the two brothers in the respective companies, marketing practices and licensing agreements, among other things, would negate any comparability. Also, within four days after the subpoena was served upon Wallace, an action was brought by the California company in a California court naming Wallace individually as defendant. An order was entered in that court enjoining Wallace from disclosing the corporate and financial information "sought under the New Jersey subpoena issued on behalf of Russell Berrie."
The question of relevancy at this stage of our proceedings has been discussed above. Further, a nonparty deponent may not assert lack of relevancy or materiality since he has no *280 real interest in the outcome of the pending litigation. Benetz v. Photon, 21 Fed.R.Serv.2d 791 (D.C.Mass. 1975); Cooney v. Sun Shipbuilding & Drydock Co., 288 F. Supp. 708 (E.D.Pa. 1968).
As to the injunction, this court is convinced that the proceeding in California was not adversarial. The papers show that the attorney representing Wallace was not present and that "he [the attorney] had no opposition to the issuance of the injunction...." All parties there sought the same result. Under such circumstances, a court sometimes enters an order as presented almost perfunctorily without having had called to its attention possible ramifications concerning non-parties. This court believes that this was the situation in the California action because this court cannot believe that a California court would knowingly and intentionally attempt to preempt subject matter jurisdiction from a New Jersey court having in personam jurisdiction over the disputing parties and attempt to prohibit the New Jersey court from ruling on the merits of an issue pending here.
Brief consideration makes obvious some inescapable difficulties inherent in accepting the principle that a foreign court could enjoin disclosure of information in the litigation pending here. As an example, suppose one party in a divorce proceeding here has a majority ownership interest and is an officer of a foreign corporation, and that the ownership interest is subject to equitable distribution. Assume that such individual voluntarily appears in an action brought nominally by the corporation in the foreign jurisdiction, as a result of which a permanent injunction is entered without opposition, prohibiting the individual from alienating any stock or disclosing any information concerning the business or finances of the corporation. Could such injunction effectively preclude the other party in the divorce litigation here, who did not even have notice of the foreign proceeding, from obtaining by way of equitable distribution a division of the asset in kind or information upon which to predicate value? This court thinks not. The nonparty in the foreign proceeding *281 would not even have the right to appeal that decree and such decree would not have the effect of res judicata where issued as it was not the result of hearing on the merits in a prior proceeding involving the same parties. See State v. Preto, 51 N.J. Super. 175, 179 (Law Div. 1958). A foreign judgment or order cannot, in itself, impair the right of a nonparty to those proceedings or inhibit access to information relevant in a proceeding here. One wishing to prohibit or restrict disclosure should seek such protection in the forum where the information is sought, or at the very least in an adversarial proceeding in a forum having jurisdiction over the one seeking the disclosure. Therefore, this court does not consider the California order dispositive on the merits of the discovery application here.
To this point we have considered plaintiff's request for discovery only in the context of the divorce litigation pending here in which plaintiff and defendant are the adversaries. Defendant did raise token opposition to the discovery, questioning relevance and materiality, as discussed above. The application of Wallace to quash the subpoena and his objection to disclosing any information is essentially a different controversy involving different parties and different considerations which must now be addressed.
The subpoena duces tecum served upon Wallace required him to produce at the time fixed for the taking of his deposition "all contracts, documents of sale or transfer and attendant financial statements relative to the sale by deponent of any interest in Wallace Berrie Co. occurring within the last 24 months." The affidavit of Wallace submitted in support of the motion to quash states that as far as he is concerned he considers the financial details of his sale to be personal and confidential in all respects and requiring disclosure to be an invasion of his privacy. He says that Russell had sought information before the subpoena was authorized and was told in essence "it's none of your business!"
*282 In the agreement whereby Wallace sold his interests it was explicitly recognized that Wallace had considerable knowledge of trade secrets, proprietary and confidential information which constituted valuable property rights of the California company and the disclosure of which would be detrimental to such company. In that agreement Wallace expressly convenanted not to use or disclose such information and to cooperate with the company in protecting its strict confidentiality. On behalf of the California company it is averred that disclosure of its cash status, level of capitalization, bank credit terms and the like to any major competitor and particularly to Russell Berrie would provide a significant competitive advantage in developing an operational strategy.
In seeking information, plaintiff has employed the broad discovery procedures embodied in our rules of civil practice and available to a litigant. See Irval Realty v. Bd. of Pub. Util. Commissioners, 61 N.J. 366, 373 (1972). Attendance of a nonparty witness for deposition purposes may be compelled by subpoena (R. 4:14-1) which may also command the production of books, papers, etc. R. 4:17-7. Discovery of financial records of nonparties has been permitted in matrimonial actions. See Gerson v. Gerson, 148 N.J. Super. 194, 196 (Ch. 1977); Merns v. Merns, 185 N.J. Super. 529 (Ch. 1982). Nevertheless, broad as modern discovery may be, it is not unbridled and not unlimited. Upon motion of the person from whom discovery is sought, the court may make any order which justice requires to protect the person (R. 4:10-3) and afford "adequate protection against unwarranted intrusion and invasion of the rights" of such person. Bead Chain Mfg. Co. v. Smith, 1 N.J. 118, 121 (1948).
All discovery procedures and disclosure requirements impose some burdens on the persons from whom information is sought the justification for which is the quest for justice. When the burdens outweigh the benefits the tools of discovery become, intentionally or unintentionally, weapons of oppression. This possibility has become apparent when only parties are involved *283 and deserves close scrutiny with respect to the interests of a nonparty. Each application to allow or restrict discovery is addressed to the discretion of the court and requires a balancing of these considerations.
While dealing with discovery from nonparties, Arcell v. Ashland Chemical Co., Inc., 152 N.J. Super. 471 (Law Div. 1977), and Beckwith v. Bethlehem Steel Corp., 182 N.J. Super. 376 (Law Div. 1981), involved situations where an action in the nature of an equitable bill of discovery was sought to be maintained.
Arcell was a products liability suit brought by former employees of American Can Co. against suppliers of materials. Third-party complaints sought indemnification and contribution from American Can as well as production of documents, use of interrogatories, etc. Based upon the public policy as expressed in the Workers' Compensation Act, Judge Tarlton denied the claims for indemnification and contribution. However, he held that the "counts for discovery adequately state a claim for relief" because American Can had information that was vital to the parties and as a self-insured with a statutory right to reimbursement had "a significant pecuniary interest in the outcome of the action."
In Beckwith plaintiffs in a pending suit sought to join AIA/NA as an additional defendant for the sole purpose of obtaining discovery. Summary judgment was granted to AIA/NA based upon a finding that there was not sufficient minimum contacts to justify exercising in personam jurisdiction. Before doing so, Judge Keefe recognized that the information sought was relevant for discovery purposes and suggested that an action for discovery could lie against a person with no pecuniary interest in the outcome of the litigation on a balance of the necessity or importance of the information sought in relation to the main case, as against the relative simplicity in which the information may be supplied and the availability of a less burdensome means of obtaining it.
*284 Neither counsel nor this court have come upon any New Jersey cases dealing with the limitation of discovery from non-parties under the court rules in the circumstances presented here.[1] This court sees no reason why the procedure under which the information is sought should affect the principles involved. The practical effect is the same regardless of whether someone is sought to be made a party for the purpose of discovery or subpoenaed as a witness under the court rules.
As gleaned from the cases in New Jersey and elsewhere, this court believes that the factors to be weighed in the consideration of an application by a nonparty to limit discovery are the interest of the proposed deponent in the outcome of the litigation, the necessity or importance of the information sought in relation to the main case, the ease of supplying the information requested, the significance of the rights or interests which the nonparty seeks to protect by limiting disclosure, and the availability of a less burdensome means of accomplishing the objective of the discovery sought.
Wallace Berrie has no interest whatsoever in the outcome of the divorce litigation pending here. While the information sought by plaintiff may be relevant, such evidence would be collateral and supportive rather than direct proof of the value of plaintiff's business interests. Need is more than desirability or convenience. Need implies essentiality. Greenspan v. State, 174 N.J. Super. 332, 334 (App.Div. 1980). In the valuation of closely held business interests, other less burdensome techniques are not only possible but are the more frequently used approaches. Neither the certified public accountant nor the expert business evaluator appointed by the court have shown any great *285 confidence in the potential importance of the information sought. In other words, the usefulness of the information sought in relation to the main case is speculative, and while there is a possibility that it would be helpful, it is certainly not essential to the perfection of plaintiff's case.
The opposition to the disclosure is based upon Wallace Berrie's desire to keep private his personal financial affairs and the desire of the California company to protect confidential business information. Neither desire is an absolute right. In Hoffman v. Delta Dental Plan of Minnesota, 517 F. Supp. 574 (D.C.Minn. 1981), the court allowed limited disclosure by affidavit concerning income of nonparties, holding that financial data was not privileged in a legal sense. In that case it appears that the information sought was clearly relevant and was the only way of establishing a material fact. In Horizons Titanium Corp. v. Norton Co., 290 F.2d 421 (1 Cir.1961), the court permitted discovery of confidential business information, stating that even where such information may be helpful to a competitor, compelling disclosure was not in itself oppressive. In that case the proposed deponents were not technically parties in the pending litigation (a mandamus proceeding against the Commissioner of Patents) but were involved in a prior proceeding which precipitated it, had a significant interest in the outcome of the case and were the only source of information concerning material facts directly involved and disputed in the main case.
The fact that personal financial affairs and confidential business information are not privileged in a statutory sense does negate any right of privacy with respect thereto. In declaring unconstitutional a statute mandating financial disclosure by public officials, the California Supreme Court held:
[We] are satisfied that the protection of one's personal affairs ... against compulsory public disclosure is an aspect of the zone of privacy which is protected by the Fourth Amendment and which also falls within the penumbra of constitutional rights into which government may not intrude absent a showing of compelling need and that the intrusion is not overly broad. [City of Carmel-by-the-Sea v. Young, 2 Cal.3d 259, 268, 466 P.2d 225, 231-232, 85 Cal. Rptr. 1, 7-8 (1970)]
*286 As noted above, it cannot be said at this time whether the information sought could be used at trial. In addressing a similar possibility in connection with discovery sought from a nonparty a federal court has said:
The right of privacy and the right to keep confidential one's financial affairs is well recognized. It seems to be part of human nature not to desire to disclose them. It is not privileged matter in the legal sense of the term, but even if the information is not privileged, and it is not, it still may be oppressive or unreasonable to require disclosure at the taking of a deposition ... It seems oppressive and unreasonable to require these persons to disclose this information in advance when many things may happen between now and the trial that might make the disclosure unnecessary.
Modern civil procedure in the Federal courts contemplates liberal disclosure. Discovery is in the interest of justice. Nevertheless, discovery is not unbridled and not unlimited. There must be restrictions to protect individuals in their natural privacy. [Hecht v. Pro-Football, Inc., 46 F.R.D. 605, 607 (D.D.C. 1969)]
As to business records, courts have been most reluctant to force a nonparty competitor to divulge confidential information. United States v. Serta Associates, Inc., 29 F.R.D. 136, 138 (N.D.Ill. 1961). Where the need for the information was not sufficient to outweigh the invasion of corporate privacy, discovery has been denied especially where the deponent is not a party to the suit. Premium Service Corp. v. Sperry & Hutchinson Co., 511 F.2d 225, 229 (9 Cir.1975).
This court is not yet prepared to conclude unequivocally that plaintiff is seeking to go on a fishing expedition. However, the evidentiary potential is speculative at best. In the contest of a criminal investigation, Justice Holmes recognized a right to confidentiality of business records in prohibiting
... a fishing expedition into private papers on the possibility that they may disclose evidence ... The interruption of business, the possible revelation of trade secrets, and the expense of compliance ... are the least considerations. It is contrary to the first principles of justice to allow a search through all of the respondents' records, relevant or irrelevant, in the hope that something will turn up. [F.T.C. v. American Tabacco Co., 264 U.S. 298, 306, 44 S.Ct. 336, 337, 68 L.Ed. 696, 701 (1921)]
Weighing the potential importance and probative value of the main case of the data sought against the existence of a sibling rivalry with strained familial relationship as well as the competitive business positions, this court believes that the right *287 of privacy with respect to personal financial affairs and confidential business information far outweigh the necessity for disclosure in this case. There are other means for proving the value of plaintiff's business interests without any unwelcome intrusion being visited upon non-parties.
Plaintiff urges that if any limitation is deemed appropriate, it be accomplished by the use of a protective order to restrict further disclosure rather than prohibiting any inquiry whatsoever. Any such "protective order" would be more nominal than real. The objection to disclosure is with particular reference to plaintiff. Assuming relevance, i.e., comparability, were established, which threshold determination would require disclosure of much of the information sought to be protected, and the data was then used to support an expert's opinion, a litigant could not be precluded from inquiring into the foundation of the opinion. Expert opinions, even those of court appointed professionals, are permitted to aid the trier of the fact in reaching the ultimate conclusion not to usurp the fact finding function of the court. A party has the right to challenge an expert's conclusion and credibility based upon the method of analysis and the facts upon which the opinion is based. If the data is used for any purpose in the trial and thereby could affect the ultimate conclusion, which possibility would be the only justification for allowing the discovery in the first place, a litigant cannot be denied access thereto. R. 4:10-2(d)(2) allows deposing an expert prior to trial as to his opinion and the factual basis thereof. Therefore, the only effective protective order which would assure non-disclosure to the plaintiff would be one issued pursuant to R. 4:10-3(a) "that the discovery not be had."
To require Wallace Berrie to provide discovery over his objection under these circumstances is unreasonable and oppressive, imposes an undue burden upon him and is an unwarranted intrusion and invasion of his rights. His application to quash the subpoena duces tecum served upon him by plaintiff is, therefore, granted.
NOTES
[1] There are cases in which discovery was sought from a public agency where different considerations may be pertinent. See e.g., Bzozowski v. Penn.-Reading Seashore Lines, 107 N.J. Super. 467, 468 (Law Div. 1969); Lakewood Trust Co. v. Fidelity & Deposit Co., 81 N.J. Super. 329 (Law Div. 1963). See, also, Wolfe v. Massachusetts Port Auth., 366 Mass. 417, 319 N.E.2d 423 (Sup.Jud.Ct. 1974).