NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-3060-20

TRENTON RENEWABLE
POWER, LLC,

      Plaintiff,[1]

v.

DENALI WATER
SOLUTIONS, LLC,

      Defendant-Respondent.

_____

SYMBIONT SCIENCE,
ENGINEERING AND
CONSTRUCTION, INC.,

      Appellant.

_____

> **APPROVED FOR PUBLICATION**
>
> **January 24, 2022**
>
> **APPELLATE DIVISION**

Argued November 29, 2021 – Decided January 24, 2022

Before Judges Messano, Accurso, and Enright.

On appeal from an interlocutory order of the Superior Court of New Jersey, Chancery Division, Mercer County, Docket No. C-000049-20.

---

[1] Trenton Renewable Power, LLC is not a party to the appeal.

Daniel J. Cohen argued the cause for appellant (Newman, Simpson & Cohen, LLP, attorneys; Daniel J. Cohen and Daniel C. Stark, on the briefs).

Jeffrey M. Pollock argued the cause for respondent (Fox Rothschild, LLP, attorneys; Jeffrey M. Pollock and Steven J. Link, of counsel and on the brief; Dominique J. Carroll, on the brief).

The opinion of the court was delivered by

MESSANO, P.J.A.D.

Plaintiff Trenton Renewable Power, LLC owns and operates an anaerobic biodigester facility in Trenton (the Trenton Facility). Plaintiff or its predecessors contracted with non-party appellant, Symbiont Science, Engineering and Construction, LLC (Symbiont), an engineering, design and construction firm in Milwaukee, Wisconsin, to design and build out the facility. Defendant Denali Water Solutions, LLC (Denali) contracted with plaintiff to supply organic waste for processing at the Trenton Facility.

Disagreements arose between plaintiff and Denali, and, in March 2020, Denali cited the contract's force majeure provision, claiming the Covid-19 pandemic made it impossible for it to perform as required by the agreement. Denali also alleged the Trenton Facility could not process all categories and quantities of waste Denali was required to deliver under the contract because of fundamental design flaws and inadequate equipment and technology at the plant. Unable to resolve the dispute, plaintiff filed suit.

2
A-3060-20

The judge denied plaintiff a temporary restraining order, and, before the date set for a hearing on a preliminary injunction, plaintiff eliminated its request for injunctive relief in its July 2020 amended complaint. Denali answered and served plaintiff, Symbiont and other non-parties, Renew Energy A/S LLC (Renew), DSM Environmental Services, Inc. (DSM), and Leidos Engineering & Sciences, Inc. (Leidos), with subpoenas ad testificandum and duces tecum. When plaintiff and most of the non-parties failed to comply, Denali filed a motion to compel.[2]

Plaintiff, Symbiont, and other non-parties filed cross-motions to quash the subpoena or, alternatively, for a protective order limiting the scope of the request.[3] Symbiont asserted compliance would be unduly burdensome, and it also sought to shift the costs of compliance to Denali. The judge entered an order on February 1, 2021, granting Denali's motion to compel and denying the cross-motions to quash. Symbiont moved for reconsideration, which the judge denied, and he subsequently denied Symbiont's motion for a stay pending appeal.

---

[2] In a footnote in its brief, Denali states that DSM did not file opposition to Denali's motion to compel and produced the requested discovery.

[3] Symbiont's counsel represented all the non-parties before the motion judge, but only Symbiont moved for leave to appeal. As appropriate, we limit our discussion to Symbiont's arguments.

A-3060-20

We granted Symbiont's motion for leave to appeal and temporarily stayed the discovery order for forty-five days to permit the parties to participate in a conference through the Civil Appeals Settlement Program; the conference was unsuccessful. In the interim, pursuant to Rule 4:41-1, the judge appointed a special discovery master because of the extraordinary volume of discovery-related issues that arose. The order limited the master's authority to resolving discovery disputes between the parties. On September 7, 2021, we entered an order staying further discovery as to Symbiont and accelerated its appeal from the motion judge's February 1 and April 22, 2021 orders.

## I.

The record further reveals the judge entered a case management order on September 3, 2020. As expected, the order set forth deadlines for various discovery, with all "fact discovery" to be completed by April 30, 2021. The order did not explicitly mention discovery from non-parties, and it prohibited the filing of any "discovery-related motions" unless first discussed with the court. One week later, on September 10, Denali served its subpoena on Symbiont.

The subpoena demanded Symbiont provide for deposition a corporate designee with knowledge of seventeen "topics," including: the terms of

A-3060-20

Symbiont's agreement with plaintiff, "including the drafting, revision, and execution of the agreement"; "[t]he calculation of Symbiont's guaranteed maximum price to complete the construction to retrofit the Trenton Facility"; and "[a]ll communications with [plaintiff c]oncerning the construction and design" of the facility, "including but not limited to, the construction cost, construction schedule, and design modifications." Attached to the subpoena was a document demand, encompassing thirteen categories, including: all communications between Symbiont and plaintiff regarding Symbiont's efforts to be selected for the project, including "all proposals submitted, all interviews given, all pitches made, and the basis for calculating the guaranteed maximum price"; construction documents for the facility, including any modifications; and documentation of disputes between plaintiff and Symbiont; documents and communications between Symbiont and plaintiff's lenders, and between Symbiont and Renew, DSM and Leidos.

Emails in the record document the dialogue between Symbiont's counsel and Denali's counsel after service of the subpoena. In a November 25, 2020 email, Symbiont's counsel provided a list of fifty-five "custodians who worked on the [p]roject," and designated eleven who were "key personnel." He suggested the parties confer to "identify the custodians whose records [Denali] would like [Symbiont] to initially search," and to otherwise agree on a

reduction in the scope of the demand. Counsel suggested Denali would bear the costs of compliance if the scope of the discovery demand was not reduced. Denali's counsel responded five days later, stating it was "not prepared to limit [its] requests to certain custodians or search terms." As threatened in the email, Denali filed its motion to compel on December 18.

In its cross-motion to quash the subpoena or for a protective order, Symbiont's counsel, and its in-house general counsel, certified that Symbiont had preliminarily identified four "computer drives" in its electronic filing system that included some information on the Trenton project; those contained 40,000 files and approximately 136 gigabytes of data. This did not include the emails of Symbiont's 100 workers, most of whom "had some involvement with" the Trenton project, because the emails were stored elsewhere in the system. Symbiont searched only the emails of the key personnel it had earlier identified and found 30,999 potentially responsive emails. Counsel certified that an outside vendor estimated the cost of processing the data would be $10,000, plus an additional $5330 per month in storage fees. Counsel requested the court quash the subpoena or otherwise limit its scope.

The judge considered oral argument on the motion and entered an order on February 1, 2021, granting Denali's motion and denying all cross-motions. In a written statement of reasons that accompanied the order, the judge first

rejected plaintiff's contentions that the records demanded by Denali were only "marginally relevant," noting "[t]he breadth of the complaint and the damages asserted against [d]efendant involve a broad array of technical, operational, and financial aspects of the facility's operation." He concluded Denali "established a substantial showing that the records are relevant and material to its defenses," and the "expansive protective order in place adequately addresses [plaintiff's] concerns about confidentiality."

The judge did not find that Denali's demands of Symbiont were "overbroad or unduly burdensome . . . [as] the requests [we]re tailored to those aspects of [Symbiont's] involvement with [p]laintiff or the Trenton Facility most relevant to the dispute between [the parties]." The judge noted "[t]he comprehensive and permissive clawback provision minimize[d] many of [Symbiont's] concerns" regarding the burdensome nature of the discovery demand.[4] Based on Symbiont's certifications, the judge found it "already [made] significant efforts to identify custodians and responsive documents . . .

---

[4] See Zubulake v. UBS Warburg LLC, 216 F.R.D. 280, 290 (S.D.N.Y. 2003) ("[M]any parties to document-intensive litigation enter into so-called 'claw-back' agreements that allow the parties to forego privilege review altogether in favor of an agreement to return inadvertently produced privileged documents.").

and suggest[s] that [Symbiont has] already incurred the most significant costs associated with their production."

Symbiont and plaintiff moved for reconsideration. Symbiont's counsel's certification included email messages demonstrating the clawback provision was not fully negotiated at the time of the court's order. Symbiont's corporate counsel certified the clawback provision would "not minimize the 'vast majority of . . . extraordinary costs and burdens that w[ould] accompany compliance'" because Symbiont had not yet reviewed the 5.6 million pages of documents and emails to consider assertions of privilege or confidentiality.

The judge denied the reconsideration motions. In a written statement of reasons supporting the order, he first addressed and rejected plaintiff's arguments. The judge then said he already considered Symbiont's arguments regarding the burdensome nature of the demand, and "concluded . . . those burdens were not undue given the relevance and materiality of the records sought, Symbiont's steps already undertaken to identify records custodians, and the acknowledgement . . . that [counsel] were discussing a clawback provision, which" the court had since entered.

II.

Before us, Symbiont renews the arguments it raised before the motion judge, contending it will incur unreasonable burdens and costs in providing the

8

electronically stored information (ESI) demanded by Denali, and the same information is accessible from other sources, including plaintiff. Symbiont notes the clawback provision fails to address the costs Symbiont will incur in providing the ESI, and, alternatively, Symbiont argues Denali should bear the costs of production. Having considered these arguments in light of the record and applicable legal principles, we reverse.

"Generally, we accord substantial deference to a trial court's disposition of a discovery dispute." Brugaletta v. Garcia, 234 N.J. 225, 240 (2018) (citing Capital Health Sys., Inc. v. Horizon Healthcare Servs., Inc., 230 N.J. 73, 79–80 (2017)). "[A]ppellate courts are not to intervene but instead will defer to a trial judge's discovery rulings absent an abuse of discretion or a judge's misunderstanding or misapplication of the law." Capital Health, 230 N.J. at 79–80 (citing Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 371 (2011)).[5]

We "start from the premise that discovery rules 'are to be construed liberally in favor of broad pretrial discovery.'" Id. at 80 (quoting Payton v.

---

[5] We apply a similarly deferential standard of review to the denial of a motion for reconsideration. See, e.g., Cypress Point Condo. Ass'n v. Adria Towers, LLC, 441 N.J. Super. 369, 372 (App. Div. 2015) (citing Cummings v. Bahr, 295 N.J. Super. 374, 389 (App. Div. 1996)). Because the timeliness of Symbiont's appeal from the original order is unchallenged, we need not address the second order denying its motion for reconsideration.

N.J. Tpk. Auth., 148 N.J. 524, 535 (1997)). Rule 4:10-2(a) reflects this principle:

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action . . . . It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

"Consequently, to overcome the presumption in favor of discoverability, a party must show 'good cause' for withholding relevant discovery by demonstrating, for example, that the information sought is a trade secret or is otherwise confidential or proprietary." Capital Health, 230 N.J. at 80.

Yet, "the parties' discovery rights are not unlimited," Piniero v. N.J. Div. of State Police, 404 N.J. Super. 194, 204 (App. Div. 2008), and claims of privilege or confidentially are not the only reasons supporting good cause justifying non-production. Our rules recognize that "a party or . . . the person from whom discovery is sought" may "for good cause shown" seek "any order that justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." R. 4:10-3 (emphasis added); see also Horizon Blue Cross Blue Shield of N.J. v. State, 425 N.J. Super. 1, 29 (App. Div. 2012) (noting otherwise permitted discovery "may be limited by the court if it determines that the discovery sought is unreasonably

cumulative or duplicative, or the burden or expense of the proposed discovery outweighs its likely benefit" (citing R. 4:10-2(g))). A court may grant the person from whom discovery is sought various forms of relief, including: "[t]hat the discovery not be had," "the discovery . . . be had only on specified terms and conditions," or "the scope of the discovery be limited to certain matters." R. 4:10-3(a), (b), and (d). Rule 4:10-2(f)(2), cited by the motion judge, provides:

> A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost. On a motion to compel discovery or for a protective order, the party from whom discovery is sought shall demonstrate that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court nevertheless may order discovery from such sources if the requesting party establishes good cause . . . . The court may specify conditions for the discovery.
>
> [(Emphasis added).]

Few reported cases in New Jersey have considered whether the general policies recognized by our Court Rules that support broad discovery between parties to the litigation necessarily apply with equal voice to discovery demanded from non-parties. In Berrie v. Berrie, the Chancery court considered whether in the context of a contested divorce case, the plaintiff could compel the deposition of his estranged brother, a non-party, to establish

11

the worth of plaintiff's similar, privately held toy business. 188 N.J. Super. 274, 276–77 (Ch. Div. 1983). After recognizing the liberality of our discovery rules, the court noted, "broad as modern discovery may be, it is not unbridled and not unlimited." Id. at 282.

The court observed that all discovery "impose[s] some burdens on the persons from whom information is sought," and when "the burdens outweigh the benefits[,] the tools of discovery become, intentionally or unintentionally, weapons of oppression." Ibid. When "the interests of a nonparty" are involved, the court said the issue "deserves close scrutiny." Id. at 282–83. In quashing the deposition subpoena, the court concluded that requiring the estranged non-party brother to provide personal financial data was "unreasonable and oppressive, impose[d] an undue burden upon him and [wa]s an unwarranted intrusion and invasion of his rights." Id. at 287.

The Berrie court cited two trial court decisions that dealt with discovery sought from non-parties using "an equitable bill of discovery." Id. at 283; see R. 4:18-1(d) (noting the rule regarding a demand for production of documents "does not preclude an independent action against a person not a party").[6] In

---

[6] It is now accepted that a party may seek discovery from a non-party "by a proceeding in the cause," and a separate action is unnecessary. Pressler & Verniero, Current N.J. Court Rules, cmt. 4 on R. 4:18-1 (2022); see also Cavallaro v. Jamco Prop. Mgmt., 334 N.J. Super. 557, 566 (App. Div. 2000)

Arcell v. Ashland Chemical Co., the Law Division held the defendant was entitled to discovery from a non-party, the employer of one of the plaintiffs. 152 N.J. Super. 471, 507–08 (Law Div. 1977). Citing cases from other jurisdictions, the court stated that such relief was allowed "where the party from whom discovery was sought had a pecuniary interest in the outcome of the action at law or was in possession of information vital to the prosecution or defense of the legal action which information could not be obtained from any other source." Id. at 507 (emphasis added).

In Beckwith v. Bethlehem Steel Corp., the plaintiffs, in eight separate lawsuits, sought discovery from a non-party, nonprofit corporation in Virginia that "gather[ed] and disseminate[d] information to the asbestos industry, government regulatory agencies, the news media, and the general public about asbestos and its [e]ffect on human health." 182 N.J. Super. 376, 379 (Law Div. 1981). Two of the nonprofit's members were defendants in the lawsuit. Id. at 380. Unlike the non-party in Arcell, the non-party in Beckwith had no pecuniary interest in the outcome of the litigation. Judge Keefe examined other case law from New Jersey and elsewhere, and concluded:

> whether an action for discovery should lie against a
> party who has no pecuniary interest in the outcome of

(noting one primary purpose of Rule 4:14-7(c) is "to provide litigants the opportunity of full discovery from non-parties").

A-3060-20

the litigation requires a balancing of certain considerations. They are: (1) the "necessity a party may be under" in seeking the discovery, or the importance of the information sought in relation to the main case; as against (2) the relative simplicity in which the information may be supplied by defendant, and the availability of less burdensome means to obtain the same information.

[Id. at 382 (emphasis added) (citations omitted).] [7]

The Federal Rules of Civil Procedure and federal courts have explicitly recognized similar considerations regarding discovery demanded of nonparties to the litigation. Rule 26(c) is the source of our Rule 4:10-3, Pressler & Verniero, cmt. 1 on R. 4:10-3, and provides the same bases for granting a protective order to "any person from whom discovery is sought." Fed. R. Civ. P. 26(c)(1). Additionally, pursuant to Federal Rule of Civil Procedure 45(c)(3), a district court shall "quash or modify a subpoena" if it "subjects a person to an undue burden." Fed. R. Civ. P. 45(c)(3)(A)(iv).

In consideration of whether a subpoena places an undue burden on the party subpoenaed, it has been stated that "such factors as relevance, the need of the

---

[7] The court in Beckwith ultimately concluded that it lacked jurisdiction over the nonprofit Virginia corporation and dismissed the plaintiff's discovery complaint. 182 N.J. Super. at 385. Symbiont did not raise any jurisdictional argument in this case. See Catalina Marketing Corp. v. Hudyman, 459 N.J. Super. 613, 618–19 (App. Div. 2019) (discussing a New Jersey court's lack of jurisdiction to enforce a subpoena served on a foreign corporation or consider the foreign corporation's motion to quash). Denali's subpoena was served on Symbiont, "c/o Cogency Global Inc., SOP Agent," in Dayton, New Jersey.

A-3060-20

party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed" should be considered.

[Alexander v. FBI, 186 F.R.D. 21, 34 (D.D.C. 1998) (quoting United States v. Int'l Bus. Machs. Corp., 83 F.R.D. 97, 104 (S.D.N.Y. 1979)).]

"In addition, the status of a witness as a non-party to the underlying litigation 'entitles [the witness] to consideration regarding expense and inconvenience.'" Concord Boat Corp. v. Brunswick Corp., 169 F.R.D. 44, 49 (S.D.N.Y. 1996) (alteration in original) (quoting Fed. R. Civ. P. 45(c)(2)(B) (1996)); see also In re Novo Nordisk Sec. Litig., 530 F. Supp. 3d 495, 504 (D.N.J. 2021) (noting while "non-parties are entitled to broader discovery protections, there must be some showing that the burden imposed will be undue," and finding the non-party failed to demonstrate undue burden); In re Auto. Refinishing Paint Antitrust Litig., 229 F.R.D. 482, 495 (E.D.Pa. 2005) ("The witness's status as a nonparty to the litigation should also be considered." (citations omitted)).

Indeed, Federal Rule of Civil Procedure 45(d)(2)(B)(ii) specifically requires a court, in responding to a nonparty's objection that a document demand or production of ESI is unduly burdensome, to enter an order that "must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance." See 9 Moore's Federal

15

A-3060-20

Practice § 45.41 (Matthew Bender 3d Ed. 2022) (noting pursuant to the Rule, "the court is under a mandate to protect a nonparty from 'significant expense' in complying with a subpoena," and that "[s]ome courts have held that [it] requires a district court to shift the cost of compliance . . . if those costs are significant").

Here, the judge was faced with motions to quash subpoenas filed by both plaintiff and non-parties to the litigation, including Symbiont. He applied a traditional analysis regarding claims of undue burden and expense to both in much the same manner. In doing so, he failed to consider the distinction between the burden plaintiff carried in opposing Denali's broad discovery demand, and the qualitatively different burden imposed on Symbiont. After all, plaintiff commenced the litigation, and Denali was entitled to the full force of our liberal discovery rules in obtaining information from its adversary; not so with respect to Symbiont.

We think the "considerations" Judge Keefe outlined in Beckwith are necessary for a court to assess when facing a discovery dispute involving a non-party to the litigation, and these considerations are firmly tethered to our existing Rules. Rule 4:10-2(g), for example, permits a court to "act . . . on its own initiative" and limit discovery that:

> (1) . . . is obtainable from some other source that is
> more convenient, less burdensome, or less expensive;

16

(2) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (3) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

These are particularly relevant concerns when discovery is sought from a non-party. [8]

Denali argued that the discovery from Symbiont was necessary to support its claim that the Trenton Facility's imperfections made it impossible for plaintiff to process the organic waste products Denali was contractually obligated to deliver under the agreement. While we certainly pass no judgment on the merits of that defense, we note that Denali asserted the force majeure provisions in its contract with plaintiff before the suit was filed,

---

[8] When considering a challenge to the appropriate "scope of discovery," Federal Rule of Civil Procedure 26(b)(1) requires the court to consider issues similar to those contained in Rule 4:10-2(g). In Nicholas v. Wyndham, Int'l, Inc., the appeals court affirmed the district court's grant of a protective order denying the defendant's requested discovery from a nonparty. 373 F.3d 537, 542–43 (4th Cir. 2004). The court cited a prior iteration of Rule 26 and found the defendant was not entitled to discovery because the nonparty "could have no more information about the facts of liability and damages than [the p]laintiffs themselves had," and the plaintiffs had already produced significant discovery. Id. at 543.

claiming the Covid-19 pandemic made it impossible for Denali to deliver the products as required.

We acknowledge our Court Rules generally permit the parties to use the "methods of discovery . . . in any sequence." R. 4:10-4. Nonetheless, the court has discretion to order the sequencing of discovery "in the interests of justice." Ibid. When a party seeks discovery from a non-party, particularly when the ESI is voluminous, time-consuming and costly to prepare for production, and may implicate issues of privilege and confidentiality, the court must consider "the relative simplicity in which the information may be supplied by [a party], and the availability of less burdensome means to obtain the same information." Beckwith, 182 N.J. Super. at 382 (citations omitted).

Here, some of the information Denali sought from Symbiont, for example, its contract with plaintiff and any prior drafts, would undoubtedly be in plaintiff's possession, as would communications between plaintiff and Symbiont regarding the Trenton Facility's design and operation. Yet, rather than await the responses to the discovery requests it served on plaintiff roughly contemporaneously with Symbiont, Denali chose to compel production from both at the same time. Denali acknowledged at oral argument before us that this was essentially a strategic decision on its part and certainly not compelled

18

by any "necessity." <u>Ibid.</u> And, as already noted, the judge applied similar standards to the distinctly different aspects of Denali's motion.

Moreover, the judge's reliance on the clawback provision did not lessen the burden on Symbiont, which would have had to produce all the ESI, subject only to assertions of privilege or confidentiality. Although it had preliminarily evaluated how much ESI would be responsive to Denali's demand, the judge mistook Symbiont's preliminary assessment as indicative of Symbiont having done most of the necessary work, but that clearly is not the case.

We reverse and vacate the two orders under review.[9] In doing so, we hasten to add we express no opinion on Denali's ability to compel production of the ESI from Symbiont in the future if the parties cannot otherwise agree to the appropriate scope of production. We have no doubt that the court will be able to exercise its discretion in resolving any additional disputes.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[9]  We will forward our opinion to the Civil Practice Committee for consideration of whether our <u>Rules</u>, like the <u>Federal Rules</u>, should provide for explicit recognition of discovery demands served on nonparties.

A-3060-20