**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1961-24

TOCA MADERA
SCOTTSDALE, LLC,

      Plaintiff-Appellant,

v.

MADERA GROUP
INVESTMENTS, LLC,

      Defendant.

_____

DEVIN O'BRIEN,

      Respondent.

_____

      Submitted February 25, 2026 – Decided March 11, 2026

      Before Judges Mayer and Jacobs.

      On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-4734-24.

      Greenberg Traurig LLP, attorneys for appellant (Kevin G. Walsh and Samantha L. Varsalona, on the briefs).

Kelley Drye & Warren LLP, attorneys for respondent Devin O'Brien (Levi Downing and Robert Ward, on the brief).

PER CURIAM

Plaintiff Toca Madera Scottsdale, LLC (Toca Madera) appeals from a January 31, 2025 order quashing its subpoena directed to nonparty respondent Devin O'Brien. We affirm.

Toca Madera sued Madera Group Investments, LLC (MGI) in Arizona for alleged unauthorized transfers of its stock (Arizona litigation). Under a written operating agreement with MGI, shares in Toca Madera could only be transferred with Toca Madera's approval.

In 2023, Phil Vella claimed to be a third-party investor in Toca Madera through the purchase of shares from MGI. Toca Madera did not authorize the sale of its shares to any third parties. It asserted MGI transferred shares in Toca Madera to Vella and other third parties without its authority and hid those transfers from Toca Madera.

As a result, Toca Madera filed suit against MGI and MGI's Chief Financial Officer, Scott Jackson, for violating the operating agreement. In the Arizona litigation, Toca Madera requested the Arizona state court declare null and void the sale of any of its company shares to third parties. Toca Madera also asserted

2

claims under Arizona law for disassociation, breach of contract, and breach of the implied covenant of good faith and fair dealing.

In the Arizona litigation, Toca Madera served an October 21, 2024 subpoena duce tecum and ad testificandum (subpoena) upon O'Brien, a New Jersey resident and a nonparty to the Arizona litigation, seeking documents and communications exchanged among O'Brien, Jackson, and Vella. O'Brien had worked with Jackson in conjunction with numerous businesses owned or operated by Jackson unrelated to the business involved in the Arizona litigation. Toca Madera claimed O'Brien was Jackson's long-time director of finance for MGI and oversaw financial operations for many of Jackson's other businesses.

While he objected to certain documents demanded in the subpoena, O'Brien produced documents that he deemed relevant in response to other requests. Separately, O'Brien identified 125 documents he withheld as irrelevant to the Arizona litigation. O'Brien also objected to the subpoena as overly broad, unduly burdensome, and insufficiently specific, and asserted the information was available from other sources, including the defendants in the Arizona litigation. However, O'Brien agreed to be deposed pursuant to the subpoena.

Unable to resolve the disputes regarding the subpoenaed documents, Toca Madera filed a Rule 4:11-4(b) motion in the Superior Court of New Jersey to

compel O'Brien's compliance with the subpoena. Toca Madera focused its motion argument on a message between O'Brien and Jackson in claiming O'Brien had contemporaneous knowledge of investment-related activity regarding a Toca Madera "wire" "hit[ting] the bank," underscoring Toca Madera's assertion that O'Brien was "not a peripheral witness nor a disinterested third party." O'Brien opposed the motion and cross moved to quash the subpoena.

On January 16 and 28, 2025, the motion judge heard argument on the motions. During argument, the judge suggested an in camera review to determine the relevance of the documents withheld by O'Brien.[1] He also postponed ruling on the motions to allow the parties to confer and potentially resolve the issues.

The parties were unable to resolve their dispute. After considering the parties' arguments and written submissions, the judge granted O'Brien's motion to quash the subpoena and denied Toca Madera's motion to compel O'Brien's

---

[1] Counsel for Toca Madera rejected an in camera review by the judge. Instead, counsel suggested appointment of a special discovery adjudicator to review O'Brien's 125 separately withheld documents. Toca Madera proposed it would bear the cost associated with the services of a special discovery adjudicator. However, there was no formal motion to appoint a special discovery adjudicator nor was there consent to such an appointment. See R. 4:41-1. Thus, the judge did not address appointment of a special discovery adjudicator.

A-1961-24

compliance with the subpoena. In a written notation at the bottom of a January 31, 2025 order, citing Lipsky v. New Jersey Association of Health Plans, Inc., 474 N.J. Super. 447, 466 (App. Div. 2023), the judge concluded Toca Madera had "not demonstrated that compliance with the subpoena [was] not unduly burdensome nor that the documents were needed or unavailable through other means."

On appeal, Toca Madera argues the judge abused his discretion in granting O'Brien's motion to quash the subpoena and denying its motion to enforce compliance with the subpoena. It contends the judge misapplied the standard for discovery applicable to nonparties under Berrie v. Berrie, 188 N.J. Super. 274 (Ch. Div. 1983), and conflicts with appellate case law governing nonparty discovery. We reject these arguments.

A trial court's ruling determining whether information or documents are subject to discovery is entitled to deference. Payton v. N.J. Tpk. Auth., 148 N.J. 524, 559 (1997). "We 'will not ordinarily reverse a trial court's disposition on a discovery dispute "absent an abuse of discretion or a judge's misunderstanding or misapplication of the law."'" Alternative Global One, LLC v. Feingold, 479 N.J. Super. 593, 599 (App. Div. 2024) (quoting Brugaletta v. Garcia, 234 N.J. 225, 240 (2018)). "We 'review [a] trial court's decision to quash [a] subpoena pursuant to an indulgent standard of review.'" Platkin v. Smith & Wesson Sales

Co., Inc., 474 N.J. Super. 476, 489 (App. Div. 2023) (quoting In re Subpoena Duces Tecum on Custodian of Recs., 214 N.J. 147, 162 (2013)).

A party's right to discovery is "not unlimited." Alternative Global One, LLC, 479 N.J. Super. at 600 (quoting Trenton Renewable Power, LLC v. Denali Water Solutions, LLC, 470 N.J. Super. 218, 226 (App. Div. 2022)). Rule 1:9-2 allows parties to subpoena "production of books, papers, documents, electronically stored information, or other objects designated therein," while allowing persons or entities served with a subpoena to file a motion to "quash or modify the subpoena or notice if compliance would be unreasonable or oppressive." "Upon motion of the person from whom discovery is sought, the court may make any order which justice requires to protect the person . . . and afford 'adequate protection against unwarranted intrusion and invasion of the rights' of such person." Berrie, 188 N.J. Super. at 282 (quoting Bead Chain Mfg. Co. v. Smith, 1 N.J. 118, 121 (1948)).

The primary source of discovery should be from the parties and "only secondarily" from nonparties. Lipsky, 474 N.J. Super. at 470 (citations omitted). When parties demand discovery from nonparties, courts apply "close scrutiny with respect to the interests of [the] nonparty." Berrie, 188 N.J. Super. at 283.

6

In Berrie, the trial court applied the following factors where a party sought to obtain discovery from a nonparty:

> the interest of the proposed deponent in the outcome of the litigation, the necessity or importance of the information sought in relation to the main case, the ease of supplying the information requested, the significance of the rights or interests which the nonparty seeks to protect by limiting disclosure, and the availability of a less burdensome means of accomplishing the objective of the discovery sought.
>
> [188 N.J. Super. at 284.]

In Trenton Renewable, we identified a three-factor test derived from Berrie to be applied to persons or entities "who ha[ve] no pecuniary interest in the outcome of the litigation." 470 N.J. Super. at 229 (quoting Beckwith v. Bethlehem Steel Corp., 182 N.J. Super. 376, 382 (Law Div. 1981)). In that case, we directed trial courts to consider the following when resolving discovery disputes related to a nonparty:

> (1) the 'necessity a party may be under' in seeking the discovery, or the importance of the information sought in relation to the main case; as against (2) the relative simplicity in which the information may be supplied by defendant; and (3) the availability of less burdensome means to obtain the same information.
>
> [Ibid. (emphasis removed) (quoting Beckwith, 182 N.J. Super. at 382).]

A-1961-24

Under the case law, courts consider the following when deciding a motion to compel nonparty discovery through a subpoena: (1) necessity, (2) the potential burden on the nonparty to produce the information, and (3) the availability of the information from less burdensome sources. Toca Scottsdale contends the judge failed to properly weigh and apply these factors in denying its motion and granting O'Brien's cross-motion.

We agree with the motion judge's decision denying Toca Madera's motion to enforce the subpoena and granting O'Brien's motion to quash the subpoena. In determining the necessity factor for nonparty discovery, "[n]eed implies essentiality" and is "more than desirability or convenience." Berrie, 188 N.J. Super. at 284 (citing Greenspan v. State, 174 N.J. Super. 332, 334 (App. Div. 1980)). Here, the judge held Toca Madera failed to demonstrate a need for O'Brien's withheld documents because the same documents and information were likely obtainable in the Arizona litigation. That the parties in the Arizona litigation were not cooperating with Toca Madera's discovery demands did not rise to the requisite "necessity" to compel O'Brien's production of the withheld documents.

Regarding the importance of the information sought, nothing in the record suggests O'Brien has additional records related to the claims in the Arizona

8

litigation. Rather, Toca Madera offers speculation and innuendo to support its motion to compel O'Brien's production of additional documents.

At his deposition, O'Brien testified under oath that he produced materials in his possession responsive to Toca Madera's subpoena pertaining to the Arizona litigation. Moreover, Toca Madera's subpoena was overly broad and unduly burdensome because O'Brien and Jackson had an expansive working relationship involving dozens of business entities completely unrelated to the operations of Toca Madera.

Further, Toca Madera's subpoena demanded information from O'Brien's personal cellphone and email accounts. Applying well-settled case law, the judge appropriately considered O'Brien's strong privacy interests regarding his personal electronic devices. See Lipsky, 474 N.J. Super. at 473. Contrary to Toca Madera's arguments, its subpoena demanded "any and all" communications between O'Brien and others. The judge noted the "extreme" measure of demanding screen shot images from O'Brien's personal cellphone and concluded such disclosure would "invade" O'Brien's privacy rights. Because the judge

found O'Brien's privacy concerns outweighed Toca Madera's need for the information, the judge properly quashed the subpoena.[2]

Further, we are satisfied that the judge correctly concluded Toca Madera had less intrusive sources for the information, specifically the defendants in the Arizona litigation. Toca Madera simply speculates the information sought in the subpoena issued to O'Brien would not be included in MGI's corporate records and documents. That the defendants in the Arizona litigation failed to produce discovery is not justification for issuing an overly broad and unduly burdensome discovery subpoena directed to a nonparty.

Additionally, Toca Madera deposed O'Brien regarding his association, if any, with the transfer of Toca Madera shares to third parties. Nothing in the deposition testimony supported O'Brien's first-hand knowledge or involvement regarding the transfer of Toca Madera shares to third parties. On this record, we are satisfied the judge properly quashed the subpoena.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

---

[2] Toca Madera offered mechanisms to reduce O'Brien's financial burden in connection with producing the subpoenaed documents. However, O'Brien's privacy rights outweighed Toca Madera's discovery demands regardless of any suggested cost-reducing proposals.

A-1961-24